IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 3, 2015

## STATE OF TENNESSEE v. JAMES HAWKINS

**Appeal from the Criminal Court for Shelby County**
**No. 12-00523, 12-00526     Lee V. Coffee, Judge**

**No. W2014-01987-CCA-R3-CD  -  Filed January 20, 2016**

Defendant, James Hawkins, appeals his convictions for two counts of rape of a child. Defendant raises four issues: (1) whether there was a fatal variance between the original indictments and the offenses elected by the State; (2) whether the trial court erred by admitting the forensic interview of one of the victims; (3) whether the State failed to properly elect offenses; and (4) whether there was sufficient evidence to support his convictions beyond a reasonable doubt. Based upon our review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

Andrea Sipes Lester (on appeal), Jackson, Tennessee; Leslie I. Ballin (at trial), Memphis, Tennessee, for the appellant, James Hawkins.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Eric Christensen and Lessie Rainey, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

*Factual and Procedural Background*

This is Defendant's direct appeal from his two convictions for rape of a child. Defendant was alleged to have raped his step-daughter, I.H., and his daughter, J.H.[1] Prior to trial, the State moved to amend the indictments to expand the time during which the rapes were alleged to occur, which was granted by the trial court.

At the April 2014 trial, Issis Kingsley Hawkins, Defendant's daughter and the adult half-sister of J.H., testified that she became concerned about the victims during the summer of 2010. She noticed that they were behaving oddly and that they would act differently when they were at her house. On some occasions when she attempted to visit the victims at home, Defendant would not open the door. Ms. Hawkins asked Defendant if both girls could visit at her house, and he permitted the victims to go. While at Ms. Hawkins's house, she asked them individually if Defendant had done anything to them. The victims cried and reluctantly admitted that Defendant had raped them. I.H. reported that Defendant had taken her into the den, the recreational vehicle ("RV"), and different rooms on numerous occasions to rape her. Ms. Hawkins contacted the police to report the abuse.

On September 6, 2010, Officer Jermaine Simpson of the Memphis Police Department responded to Ms. Hawkins's call and spoke to the victims. I.H. told officers that her father was coming to pick her up and that she did not want to go with him because he had been raping her and her sister. She reported that her father had raped her in the summer of 2009 in an RV. I.H. appeared very scared and stuttered as she told the officers about the abuse. J.H. also reported that Defendant had raped her in the RV in 2010. The victims stated that they had told their mother but that she did not believe them. When Defendant arrived, officers did not permit him to go inside the apartment. Defendant denied that he raped the victims.

I.H. is Defendant's step-daughter and half-sister of J.H. She was eighteen years old at the time of trial. Prior to September of 2010, I.H. lived in a home with Defendant, her mother, two younger sisters, and two younger brothers. The family moved into the home when J.H. was a baby. Soon after moving in, Defendant began touching and beating I.H., and she wasn't eating properly. She recalled that Defendant first touched her when she was in elementary school. The first time it happened, he called her into the downstairs den. Defendant pulled down her pants and then his pants, sat her on the arm of the couch, stood in front of her, and "put his private part in my private part." She remembered that he moved around, back and forth, and that it hurt. She was eleven or twelve years old at the time and in the fifth grade. She could not recall how many times Defendant raped her, but she estimated that it happened more than twenty times.

---

[1] To protect the identities of the minor victims, we shall refer to them by their initials.

I.H. explained that sometimes Defendant involved her younger sister, J.H., in the rapes. He would make J.H. stand watch at the bottom of the stairs to let him know if anyone was coming while he raped I.H. in the den. He would then make I.H. stand watch while he raped J.H. I.H. recalled that Defendant had raped her in the home office in a chair in front of a window. He also raped her in the RV that was parked in front of the house. He forced the victims to take turns standing watch in the front of the RV while he raped the other one in the bedroom area. I.H. testified that sometimes Defendant forced her to play with his nipples and put his penis in her mouth. Defendant told I.H. not to tell anyone, and I.H. was afraid of Defendant. When I.H. was in the eighth grade, she told her mother about the abuse, and her mother sent her to live with her aunt.

J.H. is Defendant's daughter and the younger half-sister of I.H. J.H. was fourteen years old at the time of trial. She previously lived with Defendant and her family until she moved out in 2010 when the sexual abuse came to light. J.H. could not recall all of the times Defendant raped her. She remembered on one occasion, shortly before she moved out in September 2010, she had been playing outside with her sisters when Defendant summoned her to the RV. He ordered her to sit on the couch, stood in front of her, pulled down both of their clothing, and inserted his "private part" in her "private part." He moved around, hurting her, until he finished and ordered her to shower. J.H. recalled that this happened in the summer shortly before she moved out of the house in September 2010.

J.H. testified that Defendant raped her on numerous occasions, beginning when she was about five years old. She recalled that he would rape her in the RV, in the den on the couch, and in the office in the chair. J.H. testified that Defendant sometimes involved I.H. in the rapes. He would summon both girls and ordered each of them to stand watch while he raped the other. J.H. testified that she was afraid because Defendant had threatened to put a gun to her head if she ever told anyone. J.H. tried to tell her mother about the abuse by telling her "Daddy acting strange," but her mother just told her to stay away from him.

Patricia Lewis, a forensic interviewer for the Memphis Child Advocacy Center, interviewed J.H. on September 13, 2010, when the victim was ten years old. A video recording of the forensic interview of J.H. was admitted into evidence and played for the jury.[2]

Mary Daley, a pediatric nurse practitioner, was qualified as an expert sexual assault nurse examiner. She testified that she examined J.H. on September 13, 2010,

---

[2] The facts developed during the pre-trial motion regarding the admissibility of the forensic interview, including the qualifications of Ms. Lewis, will be discussed in greater detail in Section II below.

when J.H. was ten years old. J.H. reported to Ms. Daley that Defendant had raped her on numerous occasions. She reported that Defendant threatened to whip her and to put a gun to her head if she told anyone about the abuse. She reported that the rapes were painful. During her examination of J.H., Ms. Daley found a deep cleft mark on her hymen, consistent with an old scar, as well as a "notched-out" area on the hymen. Ms. Daley explained that even in cases of sexual assault, it is normal not to see any evidence of injuries due to the fact that the vagina is a vascular area that heals quickly. She explained that her examination results were significant because they showed injuries to J.H.'s vagina that were consistent with her report of sexual assault. Ms. Daley did not testify to an examination of I.H.

The State elected to charge Defendant with the vaginal rape of I.H. that occurred in the den in 2007 or 2008 when the victim was in fifth grade and the vaginal rape of J.H. that occurred during the summer of 2010 in the RV parked in the front yard. The jury convicted Defendant as charged of two counts of rape of a child. After a sentencing hearing, the trial court sentenced Defendant to consecutive twenty-five-year sentences, for an effective sentence of fifty years at one hundred percent. Defendant filed a motion for new trial, which was denied. Defendant then filed a timely notice of appeal.

*Analysis*

On appeal, Defendant raises four issues: (1) whether there was a fatal variance between the original indictments and the offenses elected by the State; (2) whether the trial court erred by admitting the forensic interview of J.H.; (3) whether the State failed to properly elect offenses; and (4) whether there was sufficient evidence to support his convictions beyond a reasonable doubt.

*I. Indictment*

Defendant argues that although the trial court granted the State's motion to amend the indictment to enlarge the time frame of the criminal offenses, his convictions are void because the record on appeal did not contain the amended indictments. However, the State supplemented the record with the amended indictments. From our review, it appears that the trial court properly allowed the State to amend the indictments over Defendant's objection and that the offenses alleged occurred during the timeframes contained in the amended indictments.

An accused has a constitutional right to be informed of the nature and cause of the accusation against him or her. U.S. Const. amend. VI, XIV; Tenn. Const. art. I, § 9. An indictment must provide sufficient information "(1) to enable the accused to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the accused from double jeopardy." *State*

*v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997). The trial court's ruling on a motion to amend an indictment is a matter of discretion, and "this court will alter the trial court's decision only if that discretion has been abused." *State v. Kennedy*, 10 S.W.3d 280, 283 (Tenn. Crim. App. 1999) (citing *State v. Kirkland,* 696 S.W.2d 544, 545 (Tenn. Crim. App. 1985)).

Under Tennessee Rule of Criminal Procedure 7(b), an indictment may be amended without the defendant's consent if it is done before jeopardy attaches[3] and "if no additional or different offense is thereby charged and no substantial rights of the defendant are thereby prejudiced." The time of the offense is not an essential element of rape of a child, *see* T.C.A. § 39-13-522, nor is it a required component of an indictment generally, *see* T.C.A. § 40-13-207. This court has previously held that an amendment of the date in an indictment does not charge the defendant with a new or an additional crime and is, therefore, permissible under this rule. *Kennedy*, 10 S.W.3d at 284.

Defendant does not argue that the trial court erred by permitting the State to amend the indictments. Rather, he contends that because the amended indictments were not included in the record on appeal, his convictions are void because of a fatal variance between the original indictments and the proof presented at trial. However, it is the appellant's duty to ensure that the record on appeal contains all of the evidence relevant to those issues which are the bases of the appeal. *See* Tenn. R. App. P. 24(b); *State v. Banes*, 874 S.W.2d 73, 82 (Tenn. Crim. App. 1993). Because the State supplemented the record with the amended indictments, it is the amended indictments we will review to determine if there was a fatal variance in the proof.

"[B]efore a variance will be held to be fatal it must be deemed to be material and prejudicial." *State v. Moss*, 662 S.W.2d 590, 592 (Tenn. 1984). "A variance between an indictment or a subsequent bill of particulars and the evidence presented at trial is not fatal unless it is both material and prejudicial." *State v. Shropshire*, 45 S.W.3d 64, 71 (Tenn. Crim. App. 2000) (citing *Moss*, 662 S.W.2d at 592; *State v. Ealey,* 959 S.W.2d 605, 609 (Tenn. Crim. App. 1997)). A variance is not material when the indictment and the proof substantially correspond, the defendant is not misled or surprised at trial, and there is protection against a second prosecution of the same offense. *Moss*, 662 S.W.2d at 592.

The original indictment for victim J.H. stated that the criminal conduct occurred between July 31, 2010, and September 1, 2010. The amended indictment provided that the offense occurred between November 5, 2006, and September 1, 2010. The State

---

[3] In a jury trial, jeopardy attaches when the jury is sworn. *See State v. Huskey*, 66 S.W.3d 905, 914 (Tenn. Crim. App. 2001) (citing *State v. Knight*, 616 S.W.2d 593, 595 (Tenn. 1981), *cert. denied*, 454 U.S. 1097 (1981)).

elected an offense of rape that was committed during the summer of 2010. The original indictment for victim I.H. stated that the criminal conduct occurred between December 31, 2008, and January 1, 2010. The amended indictment provided that the offense occurred between September 21, 2003, and January 1, 2010. The State elected an offense of rape that occurred during 2007 or 2008. Because the amended indictments cover the time frame of the offenses elected by the State, there is no fatal variance. Therefore, this issue is without merit.

## II. *Forensic Interview*

Defendant contends that the trial court erred by admitting the forensic interview of J.H. because the State did not adequately prove the qualifications of the forensic interviewer, Ms. Lewis. Specifically, Defendant argues that the State failed to introduce proof that Ms. Lewis had graduated from an accredited college with a bachelor's degree in the appropriate field and failed to produce an official background check of Ms. Lewis.

The decision whether to admit evidence generally rests within the sound discretion of the trial court, and appellate courts do not interfere with the exercise of that discretion absent a clear abuse apparent on the face of the record. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). An abuse of discretion occurs when the trial court applies an incorrect legal standard, reaches an illogical or unreasonable decision, or bases its decision on a clearly erroneous assessment of the evidence. *State v. Mangrum*, 403 S.W.3d 152, 166 (Tenn. 2013) (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

Tennessee Code Annotated section 24-7-123 provides that a video recording of a forensic interview of a child under thirteen years of age is admissible at trial if the interview meets certain requirements. One of those requirements is that the interview must be conducted by a qualified forensic interviewer. *See* T.C.A. § 24-7-123(3).

During the pre-trial evidentiary hearing, the State established that Ms. Lewis was employed by the Memphis Child Advocacy center, a non-profit corporation that meets the requirements of Tennessee Code Annotated section 9-4-213(a) and provides a neutral, child-friendly environment to conduct the forensic interview. Ms. Lewis testified that she had received the required forensic interview training from the National Children's Alliance, maintained fifteen hours of annual continuing education, and actively participated in peer review. Prior to becoming a forensic interviewer, Ms. Lewis worked for the Department of Children's Services as a case manager. Ms. Lewis testified that she did not have a criminal history. In the fourteen years that she had worked as a forensic interviewer, Ms. Lewis had completed 6,554 forensic interviews and had testified in court about six to twelve times each year. The trial court found that the requirements of Tennessee Code Annotated section 24-7-123 had been met and allowed the admission of the forensic interview.

Defendant argues that the trial court erred in admitting the forensic interview because the State failed to establish that Ms. Lewis had graduated from an accredited college or university with a bachelor's degree in a field related to social service, education, criminal justice, nursing, psychology or other similar profession. *See* T.C.A. § 24-7-123(b)(3)(B). Defendant chose not to cross-examine Ms. Lewis and did not object to her qualifications as a forensic interviewer. *See* Tenn. R. Evid. 103(a)(1) ("Error may not be predicated upon a ruling which admits . . . evidence unless a substantial right of the party is affected, and . . . a timely objection or motion to strike appears of record"); Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). In light of Ms. Lewis's extensive background in forensic interviewing, we cannot say that the trial court abused its discretion in determining that she was a qualified forensic interviewer under the statute.

Defendant also argues that the trial court erred in admitting the forensic interview because the State failed to present an official criminal background check of Ms. Lewis. Defendant does not contend that Ms. Lewis has a criminal background and acknowledges that the State asked Ms. Lewis if she had a criminal background, to which she replied that she did not. Defendant's argument relies upon Tennessee Code Annotated section 24-7-123(b)(3)(G), which provides that the forensic interviewer must not have a criminal history "as determined by a criminal records background check." However, this statute does not require that such records be admitted into evidence in determining the qualifications of the forensic interviewer. Ms. Lewis testified that she did not have a criminal background, and Defendant does not contend that this testimony is false. Again, given Ms. Lewis's extensive history of working as a forensic interviewer, we cannot say that the trial court abused its discretion in determining that she was qualified under the statute. The trial court did not err in admitting the video of the forensic interview.

### III. Election of Offenses

The Tennessee Constitution protects the right of a criminal defendant to a unanimous jury verdict. *See State v. Lemacks*, 996 S.W.2d 166, 169-70 (Tenn. 1999). Our supreme court has consistently held that when the evidence indicates that the defendant has committed more offenses against a victim than the number of offenses charged, the prosecution must elect the particular offense as charged in the indictment for which conviction is sought. *See State v. Adams*, 24 S.W.3d 289, 294 (Tenn. 2000); *State v. Brown*, 992 S.W.2d 389, 391 (Tenn. 1999). The doctrine of election is particularly important in sexual abuse cases against children that occur over a lengthy period of time because each unlawful act is a separate substantive offense rather than a continuous offense. *Tidwell v. State*, 922 S.W.2d 497, 501 (Tenn. 1996). "The two primary

purposes of this election requirement are 'to preserve a criminal defendant's right under the state constitution to a unanimous jury verdict, and to allow the State some latitude in the prosecution of criminal acts committed against young children who are frequently unable to identify a specific date on which a particular offense was committed.'" *State v. Knowles*, 470 S.W.3d 416, 423-24 (Tenn. 2015) (quoting *State v. Rickman*, 876 S.W.2d 824, 828 (Tenn. 1994)). The failure to elect offenses when the proof so requires constitutes plain error and will result in a reversal of the conviction, unless it is harmless beyond a reasonable doubt. *Adams*, 24 S.W.3d at 294.

The State "is not required to identify the particular date of the chosen offense" in cases of ongoing sexual abuse, and "a particular offense can often be identified without a date." *State v. Shelton*, 851 S.W.2d 134, 137 (Tenn. 1993). If "the evidence indicates various types of abuse, the prosecution may identify a particular type of abuse and elect that offense," or the prosecutor may ask the child victim "to describe unique surroundings or circumstances that help to identify an incident," which may include "identify[ing] an assault with reference to a meaningful event in [the child's] life, such as the beginning of school, a birthday, or a relative's visit." *Id.* at 138. Ultimately, the Tennessee Supreme Court "has concluded that '*[a]ny description* that will identify the prosecuted offense for the jury is sufficient.'" *Knowles*, 470 S.W.3d at 424 (quoting *Shelton*, 851 S.W.2d at 138).

Defendant in this case was charged with two counts of rape of a child. The first count charged him with the rape of I.H. that occurred between September 21, 2003, and January 1, 2010. At trial, I.H. testified that Defendant had raped her on numerous occasions over the years. The first rape that she could remember happened when she was eleven or twelve years old and in the fifth grade. At the time of trial in 2014, I.H. was eighteen years old; she would have been eleven years old in 2007 and twelve years old in 2008. I.H. testified that Defendant called her into the downstairs den of the family home. Defendant pulled down her pants as well as his pants, sat her on the arm of the couch, stood in front of her, and inserted his penis into her vagina. He moved back and forth, and it hurt her. Though I.H. testified that Defendant raped her "a lot," she provided no dates for these other rapes. The State elected to prosecute Defendant for the vaginal rape of I.H. that occurred in the den in 2007 or 2008 when she was in the fifth grade. The circumstances surrounding this event were unique to I.H. *See Knowles*, 470 S.W.3d at 424.

The second count charged him with the rape of J.H. that occurred between November 5, 2006, and September 1, 2010. At trial, J.H. testified that shortly before she moved out of the family home in September 2010, she had been playing outside with her sisters when Defendant summoned her to the RV. He ordered her to sit on the couch, stood in front of her, pulled down both of their clothing, and put his penis in her vagina. He moved around, hurting her, until he finished and ordered her to shower. J.H. also

testified as to other rapes where Defendant made her stand as a look out while he raped I.H. The State elected to prosecute Defendant for the vaginal rape of J.H. that occurred during the summer of 2010, before she started the fifth grade, in the RV parked in front of the family home. J.H. was able to place this event in a specific context as to time and location, identifying the rape with reference to a meaningful event in her life, namely moving out of the family home.

Defendant argues that the election of offenses was insufficient because the "only temporal elements provided were inconsistent statements regarding when the two elected offenses allegedly occurred." However, this is an argument as to witness credibility and the weight of the evidence, both of which are squarely within the province of the jury. *See State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012). For both counts, the State chose a single rape that was described by each victim with enough detail to ensure that the jury deliberated and reached a verdict on the same act. Furthermore, we rejected Defendant's argument that the indictments did not cover the timeframes of the elected offenses in Section I, above. The State made a proper election of offenses, and Defendant is not entitled to relief.

*IV. Sufficiency of the Evidence*

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

Furthermore, questions concerning the "credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." *Wagner*, 382 S.W.3d at 297 (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). This is because the jury has "the benefit of hearing witness testimony and observing witness demeanor." *State v. Robinson*, 400 S.W.3d 529, 533 (Tenn. 2013). As the Tennessee Supreme Court explained almost half a century ago:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). Therefore, "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.*; *Dorantes*, 331 S.W.3d at 379.

Defendant was charged with two counts of rape of a child. "Rape of a child is the unlawful sexual penetration of a victim by the defendant . . . if the victim is more than three (3) years of age but less than thirteen (13) years of age." T.C.A. § 39-13-522(a). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's . . . body, but emission of semen is not required." T.C.A. § 39-13-501(7).

Defendant argues that there was not sufficient proof that I.H. was under thirteen years of age when the alleged rape occurred. As discussed above, I.H. testified that the first time Defendant raped her happened when she was eleven or twelve years old and in the fifth grade. I.H. testified that Defendant called her into the downstairs den of the family home. Defendant pulled down her pants as well as his pants, sat her on the arm of the couch, stood in front of her, and inserted his penis into her vagina. Though I.H. did not testify to a specific year for this first rape, she did testify that she was eleven or twelve years old, which would have been in 2007 and 2008, respectively. By its verdict, the jury clearly accredited I.H.'s testimony and found that she was, in fact, less than thirteen years of age at the time of the elected offense.

As to victim J.H., Defendant argues that the evidence was insufficient because Ms. Daley, the pediatric nurse practitioner who examined J.H., could not say that the injuries to J.H.'s vaginal area were caused by rape. J.H. testified that shortly before she moved out of the family home in September 2010, she had been playing outside with her sisters when Defendant summoned her to the RV. He ordered her to sit on the couch, stood in front of her, pulled down both of their clothing, and put his penis in her vagina. He

moved around, hurting her, until he finished and ordered her to shower. Ms. Daley testified that the injuries she noted were consistent with the victim's report of sexual assault and were significant because the vaginal area tends to heal quickly. By its verdict, the jury clearly accredited the testimony of J.H. that she had been raped by Defendant. The State presented sufficient evidence to support both of Defendant's convictions.

*Conclusion*

Based on the foregoing, we affirm the judgments of the trial court.

_____
TIMOTHY L. EASTER, JUDGE