FILED

12/19/2024

Clerk of the
Appellate Courts

# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs at Jackson October 1, 2024

## STATE OF TENNESSEE v. NANCY ABBIE TALLENT

**Appeal from the Circuit Court for Anderson County**
**No. C1C00061        Michael S. Pemberton, Judge**

_____

### No. E2023-00750-CCA-R3-CD
_____

The pro se Defendant, Nancy Abbie Tallent, was convicted by an Anderson County Circuit Court jury of third offense driving under the influence (DUI) of an intoxicant and third offense DUI per se. *See* T.C.A. § 55-10-401. The trial court merged the convictions and sentenced the Defendant to eleven months and twenty-nine days in confinement, with seventy-five percent service. On appeal, the Defendant contends that (1) the trial court judge did not have authority to preside over her case; (2) no probable cause existed for her arrest; (3) the State violated her right to a speedy trial; (4) she was denied due process in numerous ways; (5) the State failed to meet its burden of proof; (6) the jury verdict was not supported by the evidence; and (7) the trial court failed to act as a thirteenth juror. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which TIMOTHY L. EASTER and MATTHEW J. WILSON, JJ., joined.

Nancy Abbie Tallent, Clinton, Tennessee, Pro Se.

Jonathan Skrmetti, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Dave S. Clark, District Attorney General; and Melissa Denny, Brandon K. Pelizzari, and Bradley A. Prewitt, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

The Defendant's convictions relate to a January 10, 2020, motor vehicle collision. The Anderson County Grand Jury indicted the Defendant on one count of third offense DUI and one count of third offense DUI per se. The Defendant waived her right to counsel and elected to proceed pro se.

At the trial, Jerry Morrow testified that on January 10, 2020, the Defendant backed her car out of her driveway, crossed a street, and hit his truck. Mr. Morrow said that, after the collision, he saw the Defendant "staring straight ahead" with her hands on the steering wheel and that she did not respond to his tapping on her car window. He said he went to a nearby apartment and called the police to report the collision. While Mr. Morrow called the police, the Defendant moved her car to her driveway, went into her apartment, and then returned to her car. Mr. Morrow said Oak Ridge Police Department (ORPD) officers arrived within five minutes.

ORPD Officer Jeremy Phillips testified that he responded and found the Defendant "asleep, unconscious, [and] not awake behind the wheel of the car," which was parked in her driveway. Officer Phillips said that he knocked on the car window and that the Defendant woke, although she was still "groggy." Officer Phillips observed the Defendant start to back up her car, and he opened her driver's door and applied the brake to stop the car. The Defendant stepped out of her car and appeared intoxicated. Officer Phillips said the Defendant had "difficulty standing and walking on her own, [and] a couple of times she nearly fell and one of the other officers had to catch her." Officer Phillips opined, "In no way was [the Defendant] safe to operate a motor vehicle." Officer Phillips said that he went to the Defendant's apartment's open front door, where he could see four or five empty red wine bottles in the kitchen. He did not see anyone in the house.

Retired ORPD Officer Phillip Knight testified that when he arrived at the collision scene, the Defendant was leaning against the hood of her car, she had a "blank stare" with "bloodshot and watery" eyes, and her hair was stuck to dried liquid on her chin. Mr. Knight described the Defendant as "smell[ing] of alcohol" and "having a hard time answering the questions." He said that the Defendant indicated she had taken Valium that morning. He said that he asked the Defendant to perform standardized field sobriety tests, that she failed the tests, and that she was unable to follow instructions for the horizontal gaze nystagmus test. He said the Defendant performed "very poorly" on the heel-to-toe test because she "missed heel to toe on every step, stepped off [the] line," and did not audibly count the steps. Mr. Knight also asked the Defendant to perform the one-leg-stand test but cancelled the test to prevent the Defendant from falling. Mr. Knight opined that, based upon his training and experience, the Defendant was intoxicated and could not operate a motor vehicle safely.

Mr. Knight testified that the Defendant provided a blood sample and signed the consent form, which was received as an exhibit.

Dash camera video recordings from two police cars at the scene were received as exhibits and played for the jury. The recordings were consistent with the officers' testimony.

Methodist Medical Center emergency room nurse Jamie New testified that she collected the Defendant's blood sample. Ms. New stated that her medical training included recognizing stroke symptoms and that if she had noticed the Defendant exhibiting stroke symptoms at the time she drew the Defendant's blood, she would have notified a doctor and documented the fact.

Tennessee Bureau of Investigation Special Agent Kimberly O'Bryant testified as a forensic toxicology expert that she tested the Defendant's blood samples and determined the Defendant had a blood alcohol concentration (BAC) of .341 percent. Agent O'Bryant's toxicology report was received as an exhibit. When asked if the Defendant could have consumed enough alcohol to reach a BAC of .341 percent in the few minutes between the collision and the police officers' arrival, Agent O'Bryant said the Defendant would have had to consume eleven alcoholic drinks on an empty stomach and overcome a gag reflex. On cross-examination, Agent O'Bryant testified that alcohol was metabolized at a rate of .01 to .02 percent per hour and a peak BAC was attained after thirty to ninety minutes.

The Defendant testified that after sending the Federal Bureau of Investigation a document entitled "Public Corruption and Organized Crime Run by Government Officials," law enforcement officials started arresting her. The Defendant believed it was the reason for her arrest in this case. The Defendant admitted that she was an alcoholic, that she attended Alcoholics Anonymous, and that she had been in recovery for "many years." The Defendant confirmed that she backed her car onto a street and hit Mr. Morrow's truck. She said she experienced a transient ischemic attack and needed aspirin. The Defendant said that, after the collision, she went inside her apartment to retrieve her insurance card and then returned to her car. The Defendant said that after being arrested, she experienced stroke symptoms at the jail and was transported to a medical facility, where she spent a few days in the intensive care unit. The Defendant's medical records were received as an exhibit, which she said reflected symptoms of a brain injury. The Defendant acknowledged that she failed the field sobriety tests because she "wasn't capable" but disputed that she drank alcohol on January 10, 2020.

The Defendant said that her blood sample taken at 1:38 p.m. on January 10, 2020, showed a BAC of .341 percent and that a blood sample taken at 4:36 a.m. the next day

detected no alcohol. The Defendant opined that because it should have taken between seventeen and thirty-four hours for her to fully metabolize a BAC of .341 percent, her BAC on January 10 must have been less than .341 percent.

The jury found the Defendant guilty of DUI by intoxication and DUI per se. In a bifurcated proceeding, the jury found the Defendant guilty of third offense DUI and fined the Defendant $7,500. The trial court agreed with and approved the jury's verdict as the thirteenth juror. The court merged the convictions and sentenced the Defendant to eleven months and twenty-nine days in confinement to be served at seventy-five percent.

The Defendant filed multiple motions for a new trial and before they were heard, the Defendant filed a notice of appeal on May 22, 2023. This court noted in a May 26 order that the Defendant's notice of appeal was premature because a motion for a new trial was pending in the trial court. The Defendant subsequently filed another notice of appeal, a motion to recuse the trial judge, and a motion to withdraw all her post-trial motions pending in the trial court. This court noted in a July 27 order that the Defendant's appeal was premature and advised the Defendant that her motion to recuse the trial court judge stayed all pending motions, including her motion to withdraw her post-trial pleadings. This court in an August 24 order said the following:

> In the pleading before the court, the [Defendant] insists that she has withdrawn all post-trial motions and that this appeal can now proceed on its merits. We observe that "[t]he right to pursue a motion for a new trial 'may be intentionally abandoned and effectively waived under appropriate circumstances.'" *State v. Holder*, 634 S.W.2d 284, 285 (Tenn. Crim. App. 1982) (quoting *Commonwealth ex rel. Shadd v. Myers*, 223 A.2d 296, 301 (Penn. 1966)). If the [Defendant] has, in fact, withdrawn all post-trial motions, we note that such an action may have consequences for her appeal. A review of the [Defendant's] prematurely lodged brief, received on June 21, 2023, indicates that she intends to raise some twenty-three issues concerning the trial court's rulings. However, if the [Defendant] withdraws her motion for a new trial, she may waive, or give up, many of the issues that she has raised previously, except possible challenges to the legal sufficiency of the convicting evidence and sentencing. *See State v. Bough*, 153 S.W.2d 453, 460 (Tenn. 2004) (citing Tenn. R. App. P. 3(e); *State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997)). Because there is an inconsistency with whether the [Defendant] intends to assert or waive issues on appeal, the court believes that the record should be clarified to determine whether the [Defendant] intends to withdraw all post-trial motions and whether she has done so.

Despite this court's admonition regarding withdrawing her post-trial motions, the Defendant filed an August 29, 2023 notice of withdrawing any motions pending before the trial court. This court in an August 24 order directed the trial court to provide a case status report. The trial court filed a report on December 14 that stated

> At the hearing of September 27, 2023,[] the Defendant announced that she was withdrawing all of her pending post trial motions. The court discussed with the Defendant the possible nay probable negative impact that the proposed withdrawal of her motions would have on her appeal. This court expressed its grave concern to the Defendant about her withdrawal of all her post trial motions. As a result, the court instructed the Defendant to reconsider her position and gave her an additional week to do so requiring the Defendant to submit in writing to the court by October 4, 2023, a clear statement of her intentions as to her post trial motions.

On December 9, the Defendant filed a "Notice of No Intent to Present Post Trial Motions." On December 14, the trial court entered an order allowing the Defendant to withdraw all of her post-trial motions. This court took jurisdiction of the case on February 5, 2024, after the Defendant withdrew her motion for a new trial.

On appeal, the Defendant contends that (1) the trial court judge did not have authority to preside over her case; (2) no probable cause existed for her arrest; (3) the State violated her right to a speedy trial; (4) she was denied due process on the basis of eighteen separate allegations[1]; (5) the State failed to meet its burden of proof; (6) the jury verdict was not supported by the evidence; and (7) the trial court failed to act as thirteenth juror. The State counters that the evidence is sufficient to establish the Defendant's convictions and that all other issues are waived because they were not presented to the trial court in a motion for a new trial. We agree with the State.

---

[1]The Defendant alleges she was denied due process because: (1) she suffered from excessive bond conditions; (2) she was denied the right to depose witnesses; (3) she was denied the right to have her own court reporter; (4) she was denied access to recordings before trial; (5) she was the victim of prosecutorial misconduct; (6) the Anderson County clerk and court reporter violated the Tennessee Public Records Act; (7) the appellate court record is incomplete; (8) the Anderson County Circuit Court experienced jurisdictional irregularities; (9) she was denied necessary witnesses and evidence for trial; (10) the trial judge refused to issue written orders; (11) the trial judge was prejudiced against her; (12) the trial court erred in revoking her bond; (13) she was not allowed to modify the appellate record; (14) she was denied a transcript of the preliminary hearing, motion hearings, and voir dire; (15) the trial court engaged in the unlawful selection of jury members; (16) the trial judge personally knew jurors; (17) the trial court denied her motion for new trial and refused to hear post-trial motions; and (18) the trial court failed to provide requested transcripts.

"A motion for a new trial shall be in writing or, if made orally in open court, be reduced to writing, within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). "'Before a defendant may raise an issue on appeal as the basis for seeking a new trial, the defendant must present the issue to the trial court in a timely, written motion for a new trial.'" *State v. Tony Lamons Gooch, III*, No. M2022-01395-CCA-R3-CD, 2024 WL 2814624, at *4 (Tenn. Crim. App. June 3, 2024) (quoting *State v. Christopher James Funk, Sr.*, No. E2022-01367-CCA-R3-CD, 2023 WL 7130289, at *2 (Tenn. Crim. App. Oct. 30, 2023)), *perm. app. denied* (Tenn. Nov. 20, 2024); see T.R.A.P. 3(e); Tenn. R. Crim. P. 33(b). Therefore, all issues not raised in a motion for a new trial are considered waived, except for sufficiency of the evidence and sentencing. *State v. Bough*, 152 S.W.3d 453, 460 (Tenn. 2004); *see* T.R.A.P. 3(e).

The Defendant was warned by the trial court and this court about the possible negative consequences on appeal if she withdrew her motion for a new trial. Nevertheless, she withdrew her motion, waiving any issues that could have been addressed in that motion and limiting her appellate review to sufficiency of the evidence.[2] Although the Defendant stated in her reply brief that "[t]he trial court acknowledged a new trial must be granted due to new evidence was uncovered and exculpatory evidence was denied to this Appellant[,]" a review of the record reveals no such acknowledgement by the trial court. Furthermore, the Defendant failed to cite to the record regarding this allegation, and this court's Rule 10 states, "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b); *see* T.R.A.P. 27(a)(7)(A).

As to the Defendant's allegations that the evidence is insufficient to support her convictions and that the verdict was against the weight of the evidence, these issues are properly addressed by a sufficiency of the evidence analysis. *See State v. Burlison*, 868 S.W.2d 713, 719 (Tenn. Crim. App. 1993) (stating that after a trial court has discharged its obligation as thirteenth juror and approved the verdict, an appellate court must credit the testimony of the State's witnesses and resolve evidentiary conflicts in the State's favor).

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The

---

[2] The Defendant does not raise any issues regarding sentencing.

appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

Tennessee Code Annotated sections 55-10-401(1) and (2) set forth the elements necessary to establish DUI and DUI per se:

> It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads . . . while:
>
> (1) Under the influence of any intoxicant, marijuana, controlled substance, controlled substance analogue, drug, substance affecting the central nervous system, or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself that the driver would otherwise possess; [or]
>
> (2) The alcohol concentration in the person's blood or breath is eight-hundredths of one percent (0.08%) or more[.]
>
> . . . .

Viewed in the light most favorable to the State, the evidence reflects that the Defendant backed her car onto a public street and hit Mr. Morrow's truck. Minutes after the collision, police officers found the unresponsive Defendant sitting in the driver's seat of her car. Officer Phillips testified that the Defendant appeared unconscious and that he had to open the car door and apply the brake to prevent the car from backing onto the street. Once the Defendant was out of her car, Officer Phillips described her as having "difficulty standing and walking on her own." The Defendant failed field sobriety tests and admitted she "wasn't capable" of completing the tests. Officers at the scene testified that the Defendant smelled of alcohol and that several empty wine bottles were visible in the Defendant's kitchen. The toxicology report indicated that the Defendant's BAC was .341 percent. The emergency room nurse who drew the Defendant's blood did not observe the Defendant with any stroke symptoms. The State also presented evidence of the Defendant's two prior DUI convictions. The jury heard the trial testimony and discredited the Defendant's testimony. The evidence is sufficient for a rational jury to have found the Defendant guilty beyond a reasonable doubt of third offense DUI and third offense DUI per se. The Defendant is not entitled to relief on this basis.

Although the Defendant has asked generally for plain error relief in her reply brief, plain error relief is limited to errors which are "clear, conspicuous, or obvious" and which affect the defendant's substantial rights. *State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016). "If a defendant has not otherwise properly preserved an issue for review, he bears the burden of persuading an appellate court that plain error entitles him to relief." *State v. Knowles*, 470 S.W.3d 416, 425 (Tenn. 2015) (citations omitted). Five factors are relevant

> when deciding whether an error constitutes "plain error" in the absence of an objection at trial: "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)); *see also State v. Minor*, 546 S.W.3d 59, 70 (Tenn. 2018). All five factors must exist in order for plain error to be recognized. *Smith*, 24 S.W.3d at 283. "[C]omplete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Id*. In order for this court to reverse the judgment of a trial court, the error must be "of such a great magnitude that it probably changed the outcome of the trial." *Id.*; *Adkisson*, 899 S.W.2d at 642.

The Defendant's brief fails to analyze the *Adkisson* plain error factors as to each issue raised. *See Adkisson*, 899 S.W.2d at 641-42. Although the Defendant elected to proceed pro se, she still "bears the burden of persuading an appellate court that plain error entitles [her] to relief" and is obligated to make an adequate argument as required by Rule 27 of the Tennessee Rules of Appellate Procedure. *See Knowles*, 470 S.W.3d 416, 425. That fact notwithstanding, having considered the Defendant's allegations and carefully reviewed the extensive record, we conclude that the record fails to support plain error relief. The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

**s/Robert H. Montgomery, Jr.**
ROBERT H. MONTGOMERY, JR., JUDGE