IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 1, 2025 Session

**STATE OF TENNESSEE v. ROY GARRENS, JR.**

**Appeal from the Circuit Court for Fayette County**
**No. 22-CR-70      J. Weber McCraw, Judge**

———————————————————

**No. W2024-00258-CCA-R3-CD**

———————————————————

A Fayette County jury convicted the Defendant, Roy Garrens, Jr., of especially aggravated kidnapping of a child under thirteen, aggravated assault by strangulation, and two counts of aggravated kidnapping by the possession or threat of the use of a deadly weapon. The trial court imposed an effective sentence of fifteen years' imprisonment. On appeal, the Defendant argues that the evidence is legally insufficient to support one of his aggravated kidnapping convictions. He also asserts that the trial court erred by (1) failing to merge convictions representing alternative theories of especially aggravated kidnapping; and (2) sentencing the Defendant as a Range II, multiple offender. Upon our review, we agree with the parties that the Defendant's kidnapping convictions in Counts 2 and 3 should be merged, and we respectfully remand these counts for entry of corrected judgments noting the merger. In all other respects, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Circuit Court Affirmed in Part, Modified in Part;**
**Case Remanded**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and KYLE A. HIXSON, JJ., joined.

Kendall Stivers Jones, Assistant Public Defender – Appellate Division, Tennessee District Public Defenders Conference (on appeal); Bo Burk, District Public Defender; and Matthew C. Edwards and Terry Dycus, Assistant District Public Defenders (at trial), for the appellant, Roy Garrens, Jr.

Jonathan Skrmetti, Attorney General and Reporter; Richard D. Douglas, Senior Assistant Attorney General; Mark E. Davidson, District Attorney General; and Falen M. Chandler and Erik Haas, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

### A.    THE KIDNAPPING OF M.T. AND J.T.

M.T.[1] often spent the weekends at her grandmother's house with her mother, J.T., and her three siblings.  Her grandmother lived a few doors down from the Defendant in Moscow, Tennessee.  M.T. was ten years old at the time of the events giving rise to this case.

On March 28, 2022, M.T. was with J.T. and her siblings at her grandmother's house. The Defendant texted J.T. to inform her that he had some of her belongings, and she walked down the street to retrieve them from his house.  J.T. went to the Defendant's house sometime before lunch and left her cell phone because she did not expect to stay at his house for a long time.

When J.T. arrived at the Defendant's house, he told her to sit down and talk to him while he searched for her belongings.  Eventually, the Defendant told J.T.  that he could not find her items but asked her to stay anyway.  J.T. and the Defendant had several shots of alcohol together, but J.T. began to realize that the Defendant would not let her leave the house.  She made several attempts to leave, and the Defendant first attempted to stop her verbally, then ultimately physically restrained her from leaving.

Meanwhile, M.T.'s grandmother realized that J.T. had been gone for longer than expected and sent M.T. to the Defendant's house to get J.T. so she could help with the children.  When M.T. initially arrived, the Defendant told her that her mom would be home later, but J.T. then called out from within the residence and sent M.T. to retrieve cigarettes. M.T. left and returned to the Defendant's house shortly thereafter.  At this point, the Defendant let M.T. into the house and took her to the bedroom where her mother was.  M.T. attempted to get J.T. to leave, but the Defendant was "cussing" and "yelling" and told them that they were "not going nowhere."  The Defendant instructed J.T. to take M.T.'s phone away, but J.T. refused.

---

[1]    The practice of this court is to refer to minor victims by their initials only.  We also refer to the minor victim's mother by her initials to protect the identity of the minor further.

J.T. attempted to leave several times, but the Defendant threw her against the stove in the kitchen. She also demanded that the Defendant let M.T. leave, but he physically blocked the door to prevent her from leaving. Eventually, the Defendant escalated to choking J.T. at least four times. The Defendant threatened J.T. and told her that if he were going to jail, he would kill himself and her. M.T. also heard the Defendant say "something" like, "If I go to jail, I'm going for good."

M.T. saw the Defendant holding a knife at various times throughout the incident, including when he threw J.T. onto the bed.[2] She also saw the knife lying on a dresser at one point. Although the knife appeared to be closed, M.T. feared the Defendant would use it. Both M.T. and J.T. were also afraid that they were going to die.

Eventually, M.T. was able to call her grandmother, but it was difficult for her to understand what was going on because there was "so much yelling and screaming in the background." Eventually, M.T. was able to convey that she could not leave the house, that the Defendant had a knife, and that he had been hurting J.T. M.T.'s grandmother called 911, and officers forcibly entered the Defendant's house and arrested him. Officers also recovered the knife that M.T. described the Defendant possessing.

## B. TRIAL AND SENTENCING

On July 25, 2022, a Fayette County grand jury charged the Defendant, in relevant part, with the following four crimes: Count 1: especially aggravated kidnapping of J.T. with a deadly weapon; Count 2: especially aggravated kidnapping of M.T. with a deadly weapon; Count 3: especially aggravated kidnapping of M.T., a child under the age of thirteen; and Count 4: aggravated assault against J.T. by strangulation.[3] The case proceeded to trial in August 2023.

The State called several witnesses to testify to the above facts, including J.T., M.T., M.T.'s grandmother, and two law enforcement officers. Following deliberations, the jury found the Defendant guilty of the lesser-included offenses of aggravated kidnapping with a deadly weapon in Counts 1 and 2. It also convicted him as charged of especially aggravated kidnapping and aggravated assault in Counts 3 and 4, respectively.

---

[2]     The knife, which appears from the appellate record to be a Hyper Tough plastic folding utility knife, was referred to in numerous ways, including simply as a knife or a boxcutter.

[3]     The grand jury also charged the Defendant with two additional counts of aggravated assault with a deadly weapon. However, the State dismissed these counts, and they are not at issue on appeal.

At the sentencing hearing held on September 28, 2023, the parties agreed that the Defendant was a Range II, multiple offender for his aggravated assault conviction in Count 4, and a Range I, standard offender for his other convictions. The trial court imposed the following sentences:

- Count 1: Ten years, as a Range I, standard offender, for the aggravated kidnapping of J.T. with a deadly weapon;

- Count 2: Ten years, as a Range I, standard offender, for the aggravated kidnapping of M.T. with a deadly weapon;

- Count 3: Fifteen years, as a Range I standard offender, for the especially aggravated kidnapping of M.T., a child under the age of thirteen; and

- Count 4: Ten years, as a Range II, multiple offender, for the aggravated assault against J.T. by strangulation.

The court aligned the sentences concurrently and ordered the Defendant to serve the effective fifteen-year sentence in custody in the Tennessee Department of Correction.

The Defendant filed a timely motion for a new trial, which the trial court denied on February 7, 2024. The Defendant filed a timely notice of appeal thirteen days later. *See* Tenn. R. App. P. 4(a).

## ANALYSIS

In this appeal, the Defendant raises three issues for our consideration. First, he argues that the evidence is not legally sufficient to sustain one of his convictions for the aggravated kidnapping of M.T. because he did not use or intend to use a deadly weapon against her. He next asserts that the trial court erred when it failed to merge Counts 2 and 3, which were alternative theories of especially aggravated kidnapping. Finally, he contends that the trial court erred when it sentenced him as a Range II, multiple offender for his aggravated assault conviction. We address each of these issues in turn.

4

## A. LEGAL SUFFICIENCY OF THE EVIDENCE

The Defendant first challenges the legal sufficiency of the evidence supporting his conviction for the aggravated kidnapping of M.T., arguing that the knife was not a deadly weapon as defined by law. In response, the State asserts that the Defendant had a knife in his possession and that the knife qualified as a deadly weapon as defined by statute. We agree with the State.

### 1. Standard of Appellate Review

"The standard for appellate review of a claim challenging the sufficiency of the State's evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Miller*, 638 S.W.3d 136, 157 (Tenn. 2021) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard of review is "highly deferential" in favor of the jury's verdict. *See State v. Lyons*, 669 S.W.3d 775, 791 (Tenn. 2023). Indeed, "[w]hen making that determination, the prosecution is afforded the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom." *State v. Thomas*, 687 S.W.3d 223, 249 (Tenn. 2024) (citation and internal quotation marks omitted). To that end, "[w]e do not reweigh the evidence, because questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the jury as the trier of fact." *State v. Curry*, 705 S.W.3d 176, 183 (Tenn. 2025) (citations omitted). "The standard of review is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citation and internal quotation marks omitted).

### 2. Aggravated Kidnapping

"The first step in evaluating the sufficiency of the evidence is to identify the elements of the offense." *See State v. Rimmel*, __ S.W.3d __, No. M2022-00794-SC-R11-CD, 2025 WL 717397, at *4 (Tenn. Mar. 6, 2025). Even though the Defendant was charged with the greater offense of especially aggravated kidnapping, the jury found the Defendant guilty of the lesser-included offense of aggravated kidnapping. As such, "[t]o sustain a conviction of a lesser-included offense, the proof must be sufficient to support each and every element of the conviction offense." *State v. Parker*, 350 S.W.3d 883, 909 (Tenn. 2011); *State v. Winton*, No. M2018-01447-CCA-R3-CD, 2020 WL 1950777, at *5 (Tenn. Crim. App. Apr. 23, 2020) (in the context of an aggravated kidnapping conviction,

5

recognizing that "we can only examine the elements of the conviction offense when determining the sufficiency of the evidence to sustain the conviction"), *perm. app. denied* (Tenn. Aug. 7, 2020).

As the trial court charged the jury in Count 2, aggravated kidnapping is false imprisonment committed "[w]hile the defendant is in possession of a deadly weapon or threatens the use of a deadly weapon." Tenn. Code Ann. § 39-13-304(a)(5) (2018). False imprisonment occurs when a person "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." *Id.* § 39-13-302 (2018). "[A] person acts knowingly with respect to the conduct or circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." *Id.* § 39-11-106(a)(23) (2018). Removal or confinement is unlawful when "accomplished by force, threat or fraud," or, in the case of a person who is under the age of thirteen, when "accomplished without the consent of a parent, guardian or other person responsible for the general supervision of the minor's . . . welfare." *Id.* § 39-13-301(15) (2018).

### 3.     The Knife as a Deadly Weapon

In this case, the Defendant does not challenge that he unlawfully confined M.T. so as to interfere substantially with her liberty. He also does not contest whether he possessed a knife. Instead, the Defendant argues only that his knife was not a "deadly weapon" under the law. His argument is two-fold: (1) that a knife is not a deadly weapon per se; and (2) that the Defendant did not use or intend to use the knife to cause death or serious bodily injury to M.T. In particular, he points to M.T.'s testimony that the knife was "closed" when he pushed her mother onto the bed.

Our supreme court has recognized that "deadly weapons" fall into one of two categories: weapons that are "deadly per se" and deadly because of "the manner in which they are used." *State v. McGouey*, 229 S.W.3d 668, 672 (Tenn. 2007) (citation and internal quotation marks omitted). Weapons that are deadly per se include "[a] firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury[.]" Tenn. Code Ann. § 39-11-106(a)(6)(A); *McGouey*, 229 S.W.3d at 672. Consistent with this definition, this court has observed that weapons "such as firearms or knives" are "deadly by their very nature[.]" *State v. Forster*, No. M2002-00008-CCA-R3-CD, 2003 WL 1715922, *9 (Tenn. Crim. App. Apr. 1, 2003), *perm. app. denied* (Tenn. Oct. 13, 2003). Alternatively, an item can be considered as a deadly weapon if the defendant "actually used or intended to use the item to cause death or serious bodily injury." *McGouey*, 229 S.W.3d at 673; Tenn. Code Ann. § 39-11-106(a)(6)(B). This alternative

statutory definition simply recognizes "that some instruments or objects, though not traditionally considered deadly weapons, may become deadly weapons by the manner in which they are used." *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000).

Whether an item is a deadly weapon is a question of fact for the jury to decide. *See, e.g.*, *State v. Boaz*, No. M2015-01532-CCA-R3-CD, 2016 WL 4224983, at *3 (Tenn. Crim. App. Aug. 9, 2016), *no perm. app. filed*; *State v. Patrick*, No. 03C01-9712-CC-00548, 1999 WL 84076, at *3 (Tenn. Crim. App. Feb. 19, 1999). Thus, the question is not whether the knife at issue here was, or was not, a deadly weapon as a matter of law, but only whether a reasonable juror could conclude that it was as a matter of fact.

In this case, a rational trier of fact could find that the Defendant possessed a knife as a deadly weapon during the kidnapping. "Intent rarely can be proven by direct evidence. It can be inferred from the character and nature of the act or from all the circumstances of the case in evidence." *Lyons*, 669 S.W.3d at 787 (cleaned up). During the kidnapping, the Defendant had a knife, and M.T. testified that he held the knife in particular as he threw her mother onto the bed. The Defendant also held the knife while telling M.T. and her mother that "if I go to jail, I'm going for good." From the Defendant's statements and actions, M.T. believed that the Defendant "was trying to use the knife" and would use it on her and her mother. She also testified that she believed the Defendant "would do something to [her]" if she tried to leave the house again.

Viewing this evidence in the light most favorable to the State and drawing all reasonable inferences in its favor, a rational trier of fact could certainly find that the knife was a "deadly weapon" and that the Defendant possessed it during the kidnapping. *See State v. Stevens*, No. M2019-01036-CCA-R3-CD, 2020 WL 5626245, at *2, *6 (Tenn. Crim. App. Sept. 21, 2020) (concluding that the evidence was sufficient to sustain a conviction for aggravated kidnapping when the defendant brandished a steak knife and made the victim feel that she could not leave without risking death or harm to her infant), *no perm. app. filed*. Even if we disagreed with the jury's weighing of the evidence on this point—and we do not—the "only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). We conclude that the evidence presented by the State and the reasonable inferences drawn by the jury certainly clear the threshold of "bare rationality." *See Lyons*, 669 S.W.3d at 791 ("Although the evidence is not overwhelming, our standard of review does not require it to be."). As such, we conclude that the evidence is legally sufficient to support the jury's finding that the knife was a deadly weapon.

Because the Defendant does not challenge any element of his aggravated kidnapping conviction other than whether the knife was a deadly weapon, we conclude that his conviction is supported by legally sufficient evidence. The Defendant is not entitled to relief.

## B.  MERGER

The Defendant next argues that the trial court erred when it failed to merge Counts 2 and 3, which were initially charged as alternative theories of especially aggravated kidnapping related to M.T. The State concedes that the trial court should have merged the two convictions. We agree with the parties.

### 1.  Standard of Appellate Review

"Whether multiple convictions violate double jeopardy is a mixed question of law and fact, which we review de novo without any presumption of correctness." *State v. Watkins*, 362 S.W.3d 530, 539 (Tenn. 2012) (citing *State v. Thompson*, 285 S.W.3d 840, 846 (Tenn. 2009)).

### 2.  Merger of Lesser-Included Offenses

In this case, Count 2 of the indictment charged the Defendant with the especially aggravated kidnapping of M.T. by the display of a deadly weapon. *See* Tenn. Code Ann. § 39-13-305(a)(1) (2018). Alternatively, Count 3 charged the Defendant with the especially aggravated kidnapping of M.T. because she was under the age of thirteen at the time of the confinement. *See id.* § 39-13-305(a)(2). Ultimately, the jury convicted the Defendant of the lesser-included offense of aggravated kidnapping in Count 2 and especially aggravated kidnapping in Count 3. Although the jury convicted the Defendant of separate crimes, these offenses were originally charged as alternative theories of the same act against the same victim.

"It is well settled in Tennessee that, under certain circumstances, two convictions or dual guilty verdicts must merge into a single conviction to avoid double jeopardy implications." *State v. Watson*, No. W2021-00371-CCA-R3-CD, 2022 WL 532711, at *7 (Tenn. Crim. App. Feb. 23, 2022), *no perm. app. filed*. Indeed, "[m]erger is required for guilty verdicts on alternative charges to avoid imposing multiple punishments for the same offense." *State v. Harris*, No. M2019-01609-CCA-R3-CD, 2021 WL 673015, at *21

8

(Tenn. Crim. App. Feb. 22, 2021) (citing *State v. Price*, 46 S.W.3d 785, 824 (Tenn. Crim. App. 2000)), *perm. app. denied* (Tenn. June 9, 2021). Further, we have recognized that a conviction for aggravated kidnapping should merge with the greater conviction for especially aggravated kidnapping when the charges are alternative theories of the same crime involving the same victim. *See State v. Hinton*, No. W2018-01931-CCA-R3-CD, 2020 WL 1426683, at *13 (Tenn. Crim. App. Mar. 19, 2020), *perm. app. denied* (Tenn. Sept. 21, 2020). We agree with the parties that the conviction in Count 2 should have been merged with the greater conviction in Count 3.

Our supreme court has held that when offenses are merged, the "judgment document [for the lesser conviction] should indicate in the 'Special Conditions' box that the conviction merges with the greater conviction. To avoid confusion, the merger also should be noted in the 'Special Conditions' box on the uniform judgment document for the greater or surviving conviction." *State v. Berry*, 503 S.W.3d 360, 364 (Tenn. 2015).

We respectfully remand this case to the trial court for correction of the judgments to reflect that the Defendant's conviction for aggravated kidnapping in Count 2 merges with his conviction for especially aggravated kidnapping in Count 3. *See State v. Hart*, 676 S.W.3d 103, 111 (Tenn. Crim. App. 2023). These corrections should appear in the judgment for each of the affected counts. *See Berry*, 503 S.W.3d at 364.[4]

## C.    SENTENCING

Finally, the Defendant claims the trial court erred in sentencing him for the aggravated assault of J.T. by strangulation in Count 4. More specifically, he argues the court improperly classified him as a Range II, multiple offender because the State did not prove that two foreign convictions for burglary and escape qualified as Tennessee felonies. While the Defendant acknowledges that he agreed to this status in the trial court, he now asserts the trial court committed plain error when it failed to confirm if the foreign convictions could be used for range enhancement. The State counters that the Defendant's agreement waived any claim on appeal and argues the Defendant is not entitled to plain error relief. We agree with the State.

---

[4]    Because the trial court aligned the sentences to be served concurrently, the merger does not affect the total sentence length. *See Hinton*, 2020 WL 1426683, at *13.

### 1.     Standard of Appellate Review

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022).  The principal issue here is whether the trial court erred in finding that he was a Range II, multiple offender.  This court has recognized that "[t]he standard of review applicable to the length of sentences adopted in *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012), has now been applied to the trial court's determination of an offender's range classification." *State v. Christian*, No. M2018-00320-CCA-R3-CD, 2019 WL 3948933, at *5 (Tenn. Crim. App. Aug. 21, 2019) (citing cases), *no perm. app. filed*.  Consequently, "[i]f the trial court's determination that Defendant was a Range II multiple offender is supported by the record and reflects that the trial court properly applied the purposes and principles of sentencing, the trial court's decision is reviewed for an abuse of discretion, with a presumption of reasonableness." *Id.*

### 2.     Offender Classification and Sentencing Range Determination

In Tennessee, a defendant's sentencing range is determined by considering two variables: the offense class and the defendant's offender classification. *State v. Menke*, 590 S.W.3d 455, 464 (Tenn. 2019).  The offender classification has five separate "ranges" of increasing punishment, determined by the defendant's history of prior felony criminal convictions. *See Bise*, 380 S.W.3d at 691; Tenn. Code Ann. §§ 40-35-105 to -109 (2019).  For example, a defendant may be classified as a Range II, multiple offender when he or she has a "minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes[.]" *See* Tenn. Code Ann. § 40-35-106(a)(1).

### a.     Use of Foreign Convictions for Range Determination

The calculation of a defendant's offender classification is not limited to convictions for offenses committed in Tennessee.  Instead, the General Assembly has defined "prior convictions" to include

> convictions under the laws of any other state, government or country that, if committed in this state, would have constituted an offense cognizable by the laws of this state.  In the event that a felony from a jurisdiction other than Tennessee is not a named felony in this state, the elements of the offense

shall be used by the Tennessee court to determine what classification the offense is given.

Tenn. Code Ann. § 40-35-106(b)(5).[5]

When foreign convictions are used to establish the sentencing range, the trial court must first "determine whether the foreign conviction was a 'cognizable' offense under Tennessee law." *See State v. Little*, No. M2022-00738-CCA-R3-CD, 2023 WL 4930073, at *3 (Tenn. Crim. App. Aug. 2, 2023), *no perm. app. filed*; *State v. Gordon*, No. W2021-01190-CCA-R3-CD, 2023 WL 2375707, at *4 (Tenn. Crim. App. Mar. 7, 2023), *no perm. app. filed*; *State v. Henderson*, No. W2020-01725-CCA-R3-CD, 2022 WL 630377, at *3 (Tenn. Crim. App. Mar. 4, 2022), *no perm. app. filed*. If the foreign offense is a cognizable felony offense under Tennessee law, the statute requires the court to determine what class of felony the foreign conviction would have been if the offense had been committed in Tennessee. *See State v. Vick*, 242 S.W.3d 792, 794 (Tenn. Crim. App. 2007); Tenn. Code Ann. § 40-35-106(b)(5).

As such, the statute requires the trial court to determine whether the foreign conviction was a "named felony" in Tennessee. *See Gordon*, 2023 WL 2375707, at *4; *Christian*, 2019 WL 3948933, at *6 ("Although the statutory elements of rape were substantially the same in Georgia as they were in Tennessee, there is no need to conduct an analysis of the elements of the offense because rape was a named offense in both states."). If the foreign felony is not a named felony in Tennessee, a trial court is required to then analyze the elements of the foreign felony at the time of the defendant's conviction, to determine whether it "was analogous to a felony offense under Tennessee's law as it existed at the time it was committed." *Gordon*, 2023 WL 2375707, at *4 (citing *Vick*, 242 S.W.3d at 796); *State v. Burkes*, No. E2017-00079-CCA-R3-CD, 2018 WL 2194013, at *13 (Tenn. Crim. App. May 14, 2018) (recognizing that the State is "required to show that the offense, as committed by the defendant, would have constituted a felony in Tennessee. Unless the elements of the out-of-state conviction are identical to a Tennessee felony, the State must present facts to indicate that the defendant's criminal conduct would have satisfied the elements of a Tennessee felony." (citations omitted)), *no perm. app. filed*.

---

[5] Tennessee Code Annotated section 40-35-106(b)(5) applies specifically to the question of whether a defendant is a Range II, multiple offender. However, identical provisions also consider whether a defendant is also a Range III, persistent offender or a career offender. *See* Tenn. Code Ann. §§ 40-35-107(b)(5); 40-35-108(b)(5).

### b.      Method of Proving Foreign Convictions

"[I]t is the State's burden to prove beyond a reasonable doubt that the defendant has the requisite number of prior felonies to establish the sentencing range." *Vick*, 242 S.W.3d at 796; Tenn. Code Ann. §§ 40-35-106(b)(5); 40-35-107(b)(5); 40-35-108(b)(5). In proving that a defendant has prior foreign convictions for range enhancement, the State may prove this circumstance in several ways. For example, it may introduce certified copies of the prior convictions at the sentencing hearing. *See* Tenn. Code Ann. § 40-35-202(a) (2019). While this method may be the "best practice," we have also recognized that the State may rely upon identification of foreign convictions in the presentence report. *See State v. Sexton*, No. M2018-00874-CCA-R3-CD, 2019 WL 5700889, at *5 (Tenn. Crim. App. Nov. 5, 2019), *perm. app. denied* (Tenn. Mar. 26, 2020); *State v. Mosher*, No. 01C01-9807-CC-00320, 1999 WL 820871, at *3 (Tenn. Crim. App. Oct. 13, 1999) (recognizing that testimony from the presentence report author "is allowable as proof of an out-of-state conviction during a sentencing hearing."), *no perm. app. filed*.

We have also recognized that the State's burden may be satisfied when a defendant agrees or stipulates that he or she may be sentenced in an enhanced range. The law specifically recognizes that a defendant may agree to several aspects of sentencing, just as the Defendant did in this case. *See* Tenn. Code Ann. § 40-35-203(b) (2019) ("Where the sentence is agreed upon by the district attorney general and the defendant and accepted by the court, the court may immediately impose sentence as provided in § 40-35-205(d) and no specific sentencing hearing or presentence reports shall be required."). And where the parties agree to some aspects of sentencing, the trial court is not required to hold a hearing on those issues. *See id.* ("There shall be a presentence report and hearing on any issue of sentencing not agreed upon by the parties and accepted by the court.").

We have recognized this principle with respect to range enhancement in several cases. One example may be seen in *State v. Lowery*, No. 03C01-9604-CC-00146, 1997 WL 260070 (Tenn. Crim. App. May 19, 1997), *perm. app. denied* (Tenn. Mar. 16, 1998). There, the defendant affirmatively waived presentation of the presentence report and did not object to the reliability or accuracy of the convictions offered by the State to increase his sentencing range based on a "criminal history report." On appeal, the defendant argued that he was entitled to a new sentencing hearing because the record was "devoid of any evidence" supporting his sentencing range. *Id.* at *5.

We disagreed with the defendant. Instead, we recognized that where the defendant consented to using the convictions in the trial court, and did not challenge their reliability or accuracy, "he should not be heard now to claim that these two convictions were not

proven." *Id.* We also held that, given the agreement, the trial court "was justified in considering these convictions in support of the enhancement of the range of sentence." *Id.* at *5, *7. We have since recognized that defendants may agree to be sentenced in a particular range. *See, e.g.*, *Gordon*, 2023 WL 2375707 (citing cases).

In this case, the record reflects that both parties agreed to the Defendant's Range II status based on his prior foreign convictions for burglary and escape. The State provided pretrial notice of its intent to seek punishment for the Defendant as a Range II, multiple offender, and it identified the date and court of the foreign convictions, as well as the dates of the offenses. *See* Tenn. Code Ann. § 40-35-202(a). The appellate record does not show that the Defendant objected to the notice or sought clarification from the State.

In addition, the trial court received the presentence report identifying these two foreign convictions at the sentencing hearing. At the beginning of the sentencing hearing, the court asked whether the Defendant was "a Range I," and the State represented that the Defendant was "Range II as it relates to Count Four" based upon his prior felony convictions. After the trial court confirmed that the State gave pretrial notice of enhanced punishment, it asked the Defendant's counsel, "Do you agree, [Defense Counsel], that he's a Range II as to the aggravated assault?" The Defendant's counsel replied, "Count Four, Your Honor, I do."

The trial court then asked if everyone agreed on the potential range of sentences. The State responded that the sentencing range for Count 4 was "six to ten at thirty-five percent," and the court again asked whether the Defendant's counsel agreed. The Defendant's counsel replied, "I am in agreement."

Finally, the trial court observed that the presentence report was ordered and filed, and it asked whether there was "any opposition to the contents of the presentence report" by the parties. Again, the Defendant's counsel replied, "None, Your Honor." The trial court then relied on the agreement of both parties, as it was authorized by statute to do. *See* Tenn. Code Ann. §§ 40-35-203(b); 40-35-205(d) (2019). The Defendant does not assert that his counsel acted without his consent, that he did not understand the agreement, or that it was somehow involuntary.

Under these circumstances, the Defendant has waived any challenge to his offender classification based on his foreign convictions. The statutory authority to enter sentencing agreements affirms a defendant's role in shaping the course of the proceedings. However, once a knowing and voluntary agreement is made, it carries weight. A defendant cannot both affirmatively agree to a particular sentencing outcome and later disown the result

13

when the court accepts the agreement. *See State v. Robinson*, 146 S.W.3d 469, 493 (Tenn. 2004) ("Indeed, it is well-settled that a litigant 'will not be permitted to take advantage of errors which he himself committed, or invited, or induced the trial court to commit, or which were the natural consequence of his own neglect or misconduct.'"); Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error[.]"). We respectfully decline to grant relief where the Defendant "invit[ed] the court to do the very thing of which he now complain[s]." *State v. Sutton*, No. 03C01-9708-CC-00344, 1998 WL 126250, at *3 (Tenn. Crim. App. Mar. 23, 1998), *perm. app. denied* (Tenn. Nov. 2, 1998).

At oral argument, the Defendant posited that affirming the sentence in this case would damage the underlying principle that the State must prove the sentencing range beyond a reasonable doubt. We respectfully disagree. Our sentencing statutes default to a hearing where the State bears the burden of establishing the range. Tenn. Code Ann. § 40-35-203(b). As such, if a defendant wishes to hold the State to its burden of proving offender classification, the course is simple: do not agree to the enhanced range and properly object to the lack of proof. But defendants who urge the court to accept an agreed range cannot later cry foul when the court takes them at their word. *See State v. Fusco*, 404 S.W.3d 504, 537 (Tenn. Crim. App. 2012) ("If we were to grant the Defendant a Range I sentence in this situation, it would always be sound strategy for a defendant not to raise the issue in the trial court and wait to raise the issue on appeal."). The Defendant is not entitled to relief.

### 3.     Plain Error Review

Despite affirmatively agreeing to be sentenced in Range II, the Defendant nevertheless requests that we review his offender classification for plain error. *See State v. Funk*, No. E2022-01367-CCA-R3-CD, 2023 WL 7130289, at *3 (Tenn. Crim. App. Oct. 30, 2023) ("[A] party seeking plain error relief must generally raise and argue the issue in the party's briefing, just as the party would do with all other issues in the ordinary course of an appeal."), *no perm. app. filed.* Our authority to review unpreserved issues for plain error is discretionary, and our supreme court has emphasized that this authority is to be "sparingly exercised." *See State v. Bledsoe*, 226 S.W.3d 349, 354 (Tenn. 2007).

14

Even if plain error review is appropriate in this circumstance,[6] our supreme court has recognized that relief "is limited to those errors which satisfy five criteria." *State v. Vance*, 596 S.W.3d 229, 254 (Tenn. 2020). These criteria are as follows:

(a)     the record must clearly establish what occurred in the trial court;

(b)     a clear and unequivocal rule of law must have been breached;

(c)     a substantial right of the accused must have been adversely affected;

(d)     the accused did not waive the issue for tactical reasons; and

(e)     consideration of the error is "necessary to do substantial justice."

*See*, *e.g.*, *State v. Jones*, 589 S.W.3d 747, 762 (Tenn. 2019).

Importantly, whether plain error exists "must depend upon the facts and circumstances of the particular case." *State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000). Even then, however, the "plain error must be of such a great magnitude that it probably changed the outcome of the trial." *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994).

The "defendant bears the burden of establishing all of these elements." *State v. Linville*, 647 S.W.3d 344, 354 (Tenn. 2022). An appellate court "need not consider all of the elements when it is clear from the record that at least one [of] them cannot be satisfied." *State v. Reynolds*, 635 S.W.3d 893, 931 (Tenn. 2021). "Whether the plain error doctrine

---

[6]     There is some question whether plain error can be appropriately recognized when the error asserted on appeal was affirmatively invited by the defendant in the trial court. *Cf. State v. Harris*, No. W2015-00500-CCA-R3-CD, 2016 WL 2594964, at *7 (Tenn. Crim. App. May 3, 2016) ("Because the Defendant's attorney invited any *Bruton* violation and agreed to the remedy proposed by the State at trial, the Defendant has failed to show that a clear and unequivocal rule of law was breached or that consideration of the error is 'necessary to do substantial justice[,]' and he is, therefore, not entitled to plain error relief."), *no perm. app. filed*; *State v. Towry*, No. 01C01-9310-CC-00363, 1994 WL 168738, at *4 (Tenn. Crim. App. May 5, 1994) (declining plain error relief because the defendant may not "participate in or invite error by agreeing to admission at trial and then claiming admission as error on appeal"), *perm. app. denied* (Tenn. Sept. 12, 1994). However, because the State has not raised this threshold issue, we do not consider it further here.

15

has been satisfied is a question of law which we review de novo." *State v. Knowles*, 470 S.W.3d 416, 423 (Tenn. 2015).

In this case, the Defendant has failed to show the breach of a clear and unequivocal rule of law. The Defendant argues that the trial court violated its statutory obligation to verify that his foreign convictions would constitute felonies under Tennessee law before sentencing him as a Range II, multiple offender. However, his arguments wholly ignore the effect that his own agreement had on the trial court's obligations. As we observed above, our sentencing statutes repeatedly recognize that parties may agree to a sentence, in whole or in part. To be clear, a sentencing court is not obligated to accept any agreement the parties submit. *See* Tenn. Code Ann. § 40-35-205(d). But once the court chooses to do so, it is not further *required* to hold a hearing to decide whether the agreed-upon issues are supported by other evidence. *See id.* § 40-35-203(b) ("There shall be a presentence report and hearing on any issue of sentencing not agreed upon by the parties and accepted by the court."). Thus, although a trial court ordinarily would have had an obligation to evaluate a defendant's foreign convictions before finding the appropriate sentencing range, it has no such obligation after accepting the affirmative agreement of the parties.

Admittedly, a different case may be present where the trial court goes beyond the parties' agreement and sentences a defendant in a higher range without sufficient proof in the record. *See Gordon*, 2023 WL 2375707, at \*1 (finding plain error, in part, where the defendant agreed to his status as a Range II, multiple offender, but the trial court sentenced him as a career offender instead). In this case, however, the trial court accepted the parties' agreement as to the applicable sentencing range and went no further. As such, it was not required to conduct a further hearing or consider additional proof on that agreed-upon issue. *See* Tenn. Code Ann. § 40-35-203(b). Because the Defendant has not shown the breach of a clear and unequivocal rule of law, he is not entitled to plain error relief.

**CONCLUSION**

In summary, we hold that the evidence is legally sufficient to support the Defendant's conviction for aggravated kidnapping in Count 2, although this count should be merged with the greater charge of especially aggravated kidnapping in Count 3. We also hold that the trial court acted within its discretion in sentencing the Defendant as a Range II, multiple offender in Count 4. Although we remand the case for entry of corrected

judgments reflecting the merger of Counts 2 and 3, we otherwise respectfully affirm the trial court's judgments.

s/ *Tom Greenholtz*
TOM GREENHOLTZ, JUDGE