IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 9, 2025 Session

**STATE OF TENNESSEE v. JOSHUA DAMONE PEWITTE**

**Appeal from the Circuit Court for Gibson County**
No. H10226      **Clayburn Peeples, Judge**
_____

**No. W2024-01128-CCA-R3-CD**
_____

A Gibson County jury convicted the Defendant, Joshua Damone Pewitte, of three counts of rape of a child. The trial court imposed an effective sentence of eighty years' imprisonment. On appeal, the Defendant broadly challenges whether the election process was sufficient to protect against the risk of a non-unanimous verdict. Specifically, the Defendant raises three inter-related issues regarding the election process on plain error review: (1) the State made its initial election outside the presence of the jury and did not mention its election to the jury until its rebuttal closing argument; (2) the State referenced examples of uncharged conduct during its closing argument; and (3) the language from the trial court's unanimity instruction was different from the State's election and closing argument. Upon our review, we respectfully affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Circuit Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

Kendall Stivers Jones, Assistant Public Defender – Appellate Division, Tennessee District Public Defenders Conference (on appeal); and Harold E. Dorsey, Trenton, Tennessee (at trial), for the appellant, Joshua Damone Pewitte.

Jonathan Skrmetti, Attorney General and Reporter; Ryan Davis, Assistant Attorney General; Frederick H. Agee, District Attorney General; and Scott G. Kirk and Nina W. Seiler, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

In the fall of 2017, the Defendant gained custody of the victim, a six-year-old girl who was believed to be the Defendant's biological daughter. The victim lived with the Defendant during the school year in Humboldt, Tennessee, and lived with the victim's maternal great-grandmother during the summer in Jackson.

During the following summer, the victim told her great-grandmother that the Defendant was sexually abusing her. The victim's great-grandmother reported the sexual abuse to the police, and the victim was brought in for a forensic interview. In the forensic interview, the victim revealed that the Defendant had raped her multiple times.

On January 4, 2019, a Gibson County grand jury indicted the Defendant on three counts of rape of a child. The case proceeded to trial in March 2023. During its case-in-chief, the State played a recording of the victim's forensic interview, during which the victim provided specific details about the Defendant's raping her.

### A. THE STATE'S ELECTION

After the close of the State's proof, the jury was excused from the courtroom, and the State then elected three instances upon which to base each count. The Defendant did not object to the substance of the State's election nor insist that it be announced to the jury.

As to Count 1, the State elected the instance "in the house when [the Defendant] put the thing in her mouth. It hurt her throat, and it made her throw up." The State's election in Count 2 referenced conduct "in the bedroom when [the Defendant] put her on the ground and she points to her vaginal area as to where he put it in, and he said -- she said that it hurt her." Finally, for Count 3, the State elected the act "when [the Defendant] put her -- this is a [act] separate in the bedroom -- when he put her on the ground and then he forced his thing into her mouth, held her shoulders, and made her perform oral sex."

After the election, the jury was brought back into the courtroom, and the State rested. The Defendant then presented his proof, and thereafter the parties proceeded to closing arguments. The jury was not informed of the State's election made earlier that morning before closing arguments. Instead, the State first referenced the elected offenses

during its rebuttal closing argument, and the trial court later identified the elected conduct in its unanimity instructions to the jury.

## B.   THE STATE'S CLOSING ARGUMENTS

In its initial closing argument, the State discussed the entirety of the proof but did not mention its election of the offenses. Instead, it told the jury, "[the State] in the rebuttal part of the argument . . . is going to talk about how we have chosen three of the incidents that she described. [The victim] talked about a lot of incidents, but we're going to ask you to consider three specific incidents for the counts."

The State then announced its election to the jury during its rebuttal closing. The State first described Count 1 as "the one . . . where [t]he [Defendant] made [the victim] perform oral sex on him until she threw up."

The State then characterized Count 2 as when "[the victim stated in her forensic interview], 'Sometimes [t]he [D]efendant got on top of me, and sometimes he made me get on top of him. I tried not to do it, but he just made me do it anyway. . . . 'He kind of hurts my' -- and if you remember from the video, she points down to her vaginal area."

Finally, the State described Count 3 as when the victim "was talking to [the forensic interviewer] on the couch, [and] she was doing the motion of the oral sex that [t]he [Defendant] made her do."

During the State's rebuttal, the Defendant objected to the State directly quoting from the forensic interview. The court instructed the jury that the attorneys' statements were not evidence, but merely their opinions regarding what the evidence showed. The Defendant did not otherwise object during closing arguments.

## C.   THE TRIAL COURT'S JURY INSTRUCTIONS

At the end of closing arguments, the trial court instructed the jury that the State is required to elect specific offenses to ensure a unanimous verdict. It first recounted Count 1 as "when the [D]efendant put his penis in the alleged victim's mouth and she threw up." For Count 2, the court described it as "the alleged act . . . which occurred in the bedroom and the alleged victim was thrown on the ground, and he put his penis in her private area." Finally, the court identified Count 3 as "the alleged act . . . occurring when the [D]efendant

made alleged -- made the alleged victim perform oral sex in the bedroom while he held her shoulders down."

The trial court also reiterated that statements and remarks made by the attorneys are not evidence but are only intended to help the jury understand the evidence and apply the law. The Defendant raised no issue or objection to any of the jury instructions.

### D. VERDICT AND APPEAL

The jury found the Defendant guilty on all three counts, and the trial court imposed an effective sentence of eighty years' incarceration. The Defendant thereafter filed a timely motion for a new trial, though he raised no issues regarding the election, closing arguments, or jury instructions. The court denied the motion on July 3, 2024, and the Defendant filed a timely notice of appeal twenty-eight days later. *See* Tenn. R. App. P. 4(a).

### ANALYSIS

In this appeal, the Defendant challenges whether the election process was sufficient to protect against the risk of a non-unanimous verdict.[1] Specifically, he challenges three interrelated aspects of the election process: (1) the State made its initial election outside the presence of the jury and referenced the election to the jury only during its rebuttal closing argument; (2) the State discussed uncharged conduct during both phases of closing argument; and (3) the trial court's unanimity instruction used language that differed from the phrasing employed by the State during its election and closing arguments.[2]

---

[1] Although the Defendant's briefing suggests that he raises a broad claim of unfairness, plain error does not permit relief based on generalized unfairness. Instead, it requires a showing that a clear and unequivocal rule of law has been breached—that is, a specific, identifiable error. *See State v. Walls*, 537 S.W.3d 892, 904 (Tenn. 2017). We therefore consider the discrete claims tied to the particular errors he identifies.

[2] The Defendant also alleges that the State engaged in prosecutorial misconduct by intentionally misstating the defense counsel's opening remarks and referring to examples of uncharged conduct. However, he offers no further argument or mention of this issue anywhere else in his principal or reply briefs. Of course, "simply raising an issue is not sufficient to preserve it for appellate review." *State v. Cunningham*, No. M2023-00909-CCA-R3-CD, 2024 WL 3634259, at *2 (Tenn. Crim. App. Aug. 2, 2024) (citation omitted), *no perm. app. filed.* As such, we conclude that the Defendant has waived any issue alleging prosecutorial misconduct. *See* Tenn. Ct. Crim. App. R. 10(b); *State v. Molthan*, No. M2021-01108-CCA-R3-CD, 2022 WL 17245128, at *2 (Tenn. Crim. App. Nov. 28, 2022), *no perm. app. filed*.

Because his arguments require an understanding of the election doctrine and its purposes, we begin with a brief overview of the governing principles before turning to the specific issues he presents.

## A.    ELECTION OF OFFENSES GENERALLY

When the State introduces proof of multiple instances of conduct that correspond to a single charged count, it must, "at the close of its case-in-chief, . . . 'elect' the distinct conduct about which the jury is to deliberate in returning its verdict on the relevant count." *State v. Smith*, 492 S.W.3d 224, 232-33 (Tenn. 2016).[3] The primary purpose of the election requirement is to protect a defendant's state constitutional right to a unanimous verdict by ensuring that each juror deliberates upon, and renders a verdict based on, the same offense. *See State v. Johnson*, 53 S.W.3d 628, 631 (Tenn. 2001); *State v. Branham*, 501 S.W.3d 577, 594 (Tenn. Crim. App. 2016).

Our supreme court has recognized additional purposes served by the doctrine. Election ensures that a defendant may prepare a defense to a specific charge, protects against double jeopardy by preventing retrial of the same offense, and enables meaningful appellate review of the legal sufficiency of the evidence. *See State v. Adams*, 24 S.W.3d 289, 294 (Tenn. 2000). It also "enables the trial judge to review the weight of evidence in its role as thirteenth juror[.]" *State v. Qualls*, 482 S.W.3d 1, 10 (Tenn. 2016). Because these protections are fundamental, the trial court has an independent duty to ensure that an election is made whenever the evidence establishes multiple offenses corresponding to a single count—even absent a request from the defendant. *See, e.g.*, *State v. Lemacks*, 996 S.W.2d 166, 170 (Tenn. 1999).

The State must make its election at the close of its case-in-chief, and the trial court must then properly instruct the jury so that deliberations remain confined to the elected offenses. *See Burlison v. State*, 501 S.W.2d 801, 804 (Tenn. 1973). Importantly, however, the election requirement "applies to offenses, not to the facts supporting each element of the offense." *See State v. Knowles*, 470 S.W.3d 416, 424 (Tenn. 2015). Thus, an election need not catalogue every detail of an incident; rather, "[a]ny description that will identify

---

[3]    This requirement applies when the State presents non-generic evidence describing distinguishable criminal acts. *See State v. Qualls*, 482 S.W.3d 1, 16 (Tenn. 2016). When the proof consists of generic evidence of repeated abuse without identifiable incidents, the State need not elect a specific act for each count. *Id.* at 17. In such cases, the election requirement is satisfied if the court provides a modified unanimity instruction requiring the jury to agree unanimously that the defendant committed all of the acts described. *Id.*

the prosecuted offense for the jury is sufficient." *State v. Shelton*, 851 S.W.2d 134, 138 (Tenn. 1993). And when the proof describes non-generic, distinguishable acts separated by time, circumstance, or modality, a conventional election identifying each discrete incident is sufficient to safeguard unanimity. *See Johnson*, 53 S.W.3d at 632-33.

As noted above, the Defendant challenges whether the election process in this case was sufficient to protect against the risk of a non-unanimous verdict. The State responds that he failed to object to the election, the closing arguments, or the jury instructions, thereby waiving plenary review. It further contends that the Defendant has not established entitlement to relief under the plain error doctrine. For the reasons explained below, we agree with the State.

## B.    PLAIN ERROR REVIEW

"Ordinarily, before a party can challenge the admission of evidence on appeal, the party must have preserved the issue in the trial court." *State v. Gardner*, 716 S.W.3d 388, 416 (Tenn. Crim. App. 2024). To preserve an issue for appeal, the party should first assert a timely objection in the trial court, identifying a specific ground. The party then must later raise that same issue in a timely, written motion for a new trial. Otherwise, the party waives plenary review of the issue on appeal. *See State v. Ruiz*, 716 S.W.3d 439, 453 (Tenn. Crim. App. 2024).

Our supreme court has emphasized that issue-preservation requirements apply not only to evidentiary objections but also to challenges involving procedural decisions made during trial. *See State v. Walls*, 537 S.W.3d 892, 899 (Tenn. 2017). Thus, a challenge to a procedural decision by the trial court requires "a contemporaneous objection by counsel so that the trial court [has] an opportunity to address and/or correct the issue immediately." *Id.* at 900.

The Defendant does not dispute that he failed to lodge a timely objection to any issue he now raises on appeal. He therefore acknowledges that plenary review is unavailable and instead asks this court to consider the matters under the plain error doctrine. *See Ruiz*, 716 S.W.3d at 453 ("To be clear, a party seeking plain error relief must generally raise and argue the issue in the party's briefing, just as the party would do with all other issues in the ordinary course of an appeal" (citation omitted)).

Our supreme court has recognized that "[u]nlike plenary review, which applies to all claims of error that are properly preserved, plain error review is limited to those errors

which satisfy five criteria." *State v. Vance*, 596 S.W.3d 229, 254 (Tenn. 2020). These criteria are as follows:

> (a)     the record must clearly establish what occurred in the trial court;
>
> (b)     a clear and unequivocal rule of law must have been breached;
>
> (c)     a substantial right of the accused must have been adversely affected;
>
> (d)     the accused did not waive the issue for tactical reasons; and
>
> (e)     consideration of the error is "necessary to do substantial justice."

*See*, *e.g.*, *State v. Jones*, 589 S.W.3d 747, 762 (Tenn. 2019). Whether plain error exists "must depend upon the facts and circumstances of the particular case." *State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000). Even then, however, the "plain error must be of such a great magnitude that it probably changed the outcome of the trial." *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994).

Importantly, the "defendant bears the burden of establishing all [plain error] elements." *State v. Linville*, 647 S.W.3d 344, 354 (Tenn. 2022). As such, an appellate court "need not consider all of the elements when it is clear from the record that at least one [of] them cannot be satisfied." *State v. Reynolds*, 635 S.W.3d 893, 931 (Tenn. 2021). "Whether the plain error doctrine has been satisfied is a question of law which we review de novo." *Knowles*, 470 S.W.3d at 423.

### 1.    Timing of Election's Announcement to the Jury

The Defendant first argues that the trial court erred by permitting the State to delay announcing its election of offenses to the jury until its rebuttal closing argument. He contends that this procedure deprived the jury of clarity as to the specific conduct supporting each conviction. The State responds that the Defendant has failed to demonstrate a breach of a clear and unequivocal rule of law. We agree with the State.

The requirement that an appellant establish the breach of a "clear and unequivocal rule of law" defines the narrow circumstances under which plain error relief may be granted. This limitation balances two competing imperatives: ensuring that obvious

injustices are corrected while encouraging "all trial participants to seek a fair and accurate trial the first time around." *United States v. Frady*, 456 U.S. 152, 163 (1982); *State v. Gann*, 251 S.W.3d 446, 459 (Tenn. Crim. App. 2007). Plain error relief is therefore reserved for those rare situations in which the error is "so plain" that "the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." *Frady*, 456 U.S. at 163.

To qualify as plain error, the mistake must be a breach of a clear and unequivocal rule of law. *See State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016) (error must be "clear, conspicuous, or obvious"); *see also Puckett v. United States*, 556 U.S. 129, 135 (2009). Our courts have held that this requirement is not met in the following circumstances:

- when the issue is one of first impression, *State v. Fusco*, 404 S.W.3d 504, 535 (Tenn. Crim. App. 2012); *State v. Cook*, No. W2022-01534-CCA-R3-CD, 2024 WL 638764, at *7 (Tenn. Crim. App. Feb. 15, 2024), *perm. app. denied* (Tenn. Aug. 14, 2024);

- when the law is unsettled or case law supports differing conclusions, *Walls*, 537 S.W.3d at 901; *State v. Dotson*, 450 S.W.3d 1, 70 (Tenn. 2014);

- when the defendant advances a novel legal theory, *State v. Cody*, No. E2022-00947-CCA-R3-CD, 2023 WL 9006670, at *20 (Tenn. Crim. App. Dec. 28, 2023), *no perm. app. filed*; and

- when the error was not "readily apparent based on prior case law," *State v. Fayne*, 451 S.W.3d 362, 372 (Tenn. 2014).

*See also Henderson v. United States*, 568 U.S. 266, 278 (2013) (recognizing that "'Plain' means that lower court decisions that are questionable but not plainly wrong" do not qualify for plain error relief).

Here, the parties agree that the State made its election at the close of its case-in-chief and disclosed that election to both the court and defense counsel at that time. *See Knowles*, 470 S.W.3d at 423. The Defendant nonetheless argues that the election procedure was improper because it was not announced to the jury until the State's rebuttal closing argument. He cites no authority requiring the State to announce its election to the jury before closing arguments. Instead, he contends that the timing of the announcement to the

jury frustrated the election doctrine's purpose of ensuring juror unanimity. *See Qualls*, 482 S.W.3d at 10.

We agree that the State must make its election at the close of its proof. *See Knowles*, 470 S.W.3d at 423. Beyond that settled principle, however, Tennessee law has not clearly or unequivocally defined when the State or the trial court must announce the election to the jury. Indeed, a review of our own cases reveals significant variation in that timing, including:

- at the close of its case-in-chief, *State v. Worley*, No. M2023-00867-CCA-R3-CD, 2025 WL 101656, at *8 (Tenn. Crim. App. Jan. 15, 2025), *perm. app. denied* (Tenn. June 18, 2025);

- before the State's closing argument, *State v. Langley*, No. M2004-00631-CCA-R3-CD, 2005 WL 736718, at *8 (Tenn. Crim. App. Mar. 31, 2005), *perm. app. denied* (Tenn. Oct. 10, 2005);

- during the State's closing argument, *State v. Ramey*, No. E2003-01840-CCA-R3-CD, 2004 WL 1580662, at *10 (Tenn. Crim. App. July 15, 2004), *no perm. app. filed*; and

- after the trial court instructed the jury, *State v. Sharp*, No. W2018-00156-CCA-R3-CD, 2019 WL 960431, at *4 (Tenn. Crim. App. Feb. 26, 2019), *perm. app. denied* (Tenn. Aug. 16, 2019).

This diversity of practice illustrates that no clear and unequivocal rule of law requires the jury to be informed of the State's election at any particular time before deliberations. Although the cases uniformly hold that the jury must know the elected conduct before beginning its deliberations, the Defendant's proposed requirement—that the announcement occur earlier in the trial—finds no unequivocal support in our precedent and is not "readily apparent based on prior case law." *Fayne*, 451 S.W.3d at 372. Accordingly, the Defendant has not shown that the trial court's procedure breached a clear and unequivocal rule of law. *See Walls*, 537 S.W.3d at 901; *Dotson*, 450 S.W.3d at 70.

The Defendant acknowledges that this question of timing presents an issue of first impression. But plain error review does not oblige an appellate court to resolve novel questions when no existing authority clearly establishes the rule for which the Defendant advocates. *See Dotson*, 450 S.W.3d at 72. In the absence of authority specifying when the

jury must be informed of the election—beyond the requirement that the State make its election at the close of its case-in-chief—the Defendant cannot satisfy the second plain-error factor. And because an appellate court "need not consider all of the elements when it is clear from the record that at least one [of] them cannot be satisfied," *Reynolds*, 635 S.W.3d at 931, we conclude that he is not entitled to relief on this ground.

## 2. Closing Arguments

The Defendant next argues that the trial court erred in allowing the State to reference examples of uncharged conduct during its initial and rebuttal closing arguments. The State responds that the Defendant failed to satisfy the fourth factor of plain error review: that trial counsel's failure to object was not a strategic decision or choice. We agree with the State.

### a. Effect of a Defendant's Trial Decisions and Choices on Plain Error Review

Relief under the plain error doctrine is unavailable when a defendant's failure to object results from a trial choice that fits within counsel's broader defense strategy. *See Smith*, 24 S.W.3d at 283; *Studdard v. State*, 182 S.W.3d 283, 288 (Tenn. 2005). This limitation reflects the principle that plain error review functions as a corrective doctrine, not a strategic safeguard. *State v. Walker*, 910 S.W.2d 381, 400 (Tenn. 1995) (Anderson, C.J., concurring) (citation modified). If the rule were otherwise, counsel would be incentivized to gamble with silence—testing the jury's reaction and then seeking reversal if the wager did not succeed. Such an approach distorts the adversarial process by denying the State fair notice to cure defects in its proof and by depriving the trial court of the chance to correct errors when they arise. In short, plain error review ends where trial strategy begins. *See Walker*, 910 S.W.2d at 400 (Anderson, C.J., concurring); *State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007).

As with the other factors in the plain error analysis, the defendant bears the burden of showing that "the accused did not waive the issue for tactical reasons." *Smith*, 24 S.W.3d at 283. Determining whether a waiver was tactical, however, "often is a difficult determination to make and one that is often further developed in the event of a post-conviction proceeding." *State v. Enix*, 653 S.W.3d 692, 702 n.7 (Tenn. 2022).

To that end, our courts have generally recognized that a defendant may satisfy the fourth factor without additional proof when the trial record contains no indication that counsel's conduct served any strategic purpose. Thus, where the record is "devoid of any suggestion" that counsel's omission was tactical, our courts have generally concluded that the fourth factor has been satisfied. *See Smith*, 492 S.W.3d at 238-39; *State v. Gomez*, 239 S.W.3d 733, 742 (Tenn. 2007).

However, when the record contains *some* indication that counsel's acts or omissions were consistent with a conceivable or plausible defense strategy, the defendant must then dispel the inference of a strategic decision. *See State v. Cox*, No. M2017-02178-CCA-R3-CD, 2019 WL 1057381, at *10 (Tenn. Crim. App. Mar. 6, 2019), *no perm. app. filed*; *Studdard*, 182 S.W.3d at 288. In such cases, the fourth factor will bar plain error relief unless the defendant shows that the omission resulted from inadvertence, oversight, or neglect despite inferences of a strategic choice in the record.

This inference of a trial choice may arise in two ways. First, it may arise directly, such as when counsel admits to adopting or otherwise participating in a deliberate course of action. Examples include:

- stipulating or agreeing to the admission of evidence, *see State v. Anderson*, No. W2022-00669-CCA-R3-CD, 2023 WL 3019008, at *8 (Tenn. Crim. App. Apr. 20, 2023), *perm. app. denied* (Tenn. Aug. 9, 2023); and

- admitting or conceding that the act or omission was part of the defense strategy, *see, e.g.*, *Smith*, 24 S.W.3d at 283-84; *State v. Hunt*, No. W2007-01767-CCA-R3-CD, 2008 WL 2901597, at *3 (Tenn. Crim. App. July 21, 2008), *no perm. app. filed*.

The inference may also arise circumstantially, such as when counsel's conduct aligns with or advances a defense theory. Examples here include:

- making and then withdrawing an objection, *see State v. Parker*, No. M2017-00477-CCA-R3-CD, 2018 WL 3154342, at *10 (Tenn. Crim. App. June 26, 2018), *no perm. app. filed*;

- declining to request an instruction or lodge an objection when such an action would have undermined an alternative defense theory, *see State v. Bryant*,

No. M2009-01718-CCA-R3-CD, 2010 WL 4324287, at *20 (Tenn. Crim. App. Nov. 1, 2010), *perm. app. denied* (Tenn. July 22, 2015);

- eliciting on cross-examination the same evidence later claimed to be inadmissible, *see State v. Crowe*, No. M2022-00072-CCA-R3-CD, 2022 WL 16544461, at *6 (Tenn. Crim. App. Oct. 31, 2022), *perm. app. denied* (Tenn. Jan. 13, 2023); and

- allowing evidence to be admitted and then using it affirmatively to advance a defense theory, such as by highlighting inconsistencies, suggesting fabrication, or arguing implausibility, *see State v. Menard*, No. E2021-00164-CCA-R3-CD, 2022 WL 1498767, at *10 (Tenn. Crim. App. May 12, 2022), *perm. app. denied* (Tenn. Sept. 29, 2022); *State v. Johnson*, No. M2020-01443-CCA-R3-CD, 2021 WL 5984939, at *9 (Tenn. Crim. App. Dec. 17, 2021), *perm. app. denied* (Tenn. Apr. 13, 2022).

These authorities establish a consistent framework. A defendant satisfies the fourth plain error factor either when the trial record contains no indication that counsel's actions served a defense purpose or when affirmative proof shows that his or her actions resulted from oversight or neglect rather than strategy. *See Smith*, 492 S.W.3d at 238-39; *Gomez*, 239 S.W.3d at 742. Conversely, when the record reflects conduct that aligns with or appears designed to advance a defense or defense theory, courts infer that the conduct was part of a trial choice and place the burden on the defendant to show otherwise. *See Bledsoe*, 226 S.W.3d at 355; *Studdard*, 182 S.W.3d at 288. In short, when counsel's actions reflect a choice within the range of possible defense strategies—even if the strategy ultimately proves unsuccessful—the plain error doctrine provides no relief.

With these principles in mind, we turn to the record to determine whether the Defendant has shown that his counsel's failure to object was anything but a trial decision.

### b. Plausible Inference of a Trial Decision in This Case

During the State's closing argument, the prosecutor referenced portions of the victim's forensic interview describing other uncharged incidents of sexual contact. Some of these references included incidents that occurred in the bathroom or while others were asleep. The Defendant raised no objection.

But the record reflects more than counsel's mere silence. Defense counsel went beyond the State's references by drawing on additional uncharged incidents that the State had not mentioned and by incorporating them into his own closing argument. Counsel used separate uncharged incidents of sexual contact—such as incidents that occurred in the hallway or between the victim and her brother—to portray the victim's allegations as exaggerated and implausible. He emphasized her assertion that abuse occurred "hundreds of times" and arguing that such conduct was impossible within the confines of the family's small home. Counsel further argued that the victim's account "grew" with each retelling and invited the jury to consider her allegations to be inconsistent and contrived.

These themes of fabrication and exaggeration were the cornerstone of the defense. Counsel pursued them throughout the trial, including on cross-examination, where he highlighted discrepancies in the victim's statements and suggested that her disclosure was motivated by family tension. When the State revisited these examples during rebuttal, counsel again remained silent. And nothing in the motion for a new trial suggested that the absence of any objection was due to oversight or inadvertence.

These circumstances fit squarely within the patterns previously discussed, such as where counsel's use of the same category of evidence later claimed as error demonstrates an integrated trial approach. In fact, the inference of strategy is even stronger here. Counsel not only allowed the State's references to uncharged conduct to stand, but he also expanded on them, invoking additional uncharged incidents to argue that the victim's account was illogical, inconsistent, and fabricated. His approach reflects a cohesive defense strategy aimed not at excluding the victim's statements, but at using them to undermine her credibility.

Viewed in this context, counsel's failure to object was consistent with a deliberate trial choice, not oversight, inadvertence, or neglect. It permitted counsel to confront the State's argument directly, frame the victim's allegations as implausible, and reinforce the defense theory. As our courts have long cautioned, the plain error rule does not exist to "provide a second bite at the apple for a defendant whose deliberate trial strategy failed." *Walker*, 910 S.W.2d at 400 (Anderson, C.J., concurring).

Because the record demonstrates that counsel's actions reflected a choice within the range of possible defense strategies—even if the strategy ultimately proved unsuccessful— the Defendant has not satisfied the fourth factor of plain error. *See Bledsoe*, 226 S.W.3d at 355; *Studdard*, 182 S.W.3d at 288. And because an appellate court "need not consider all of the elements when it is clear from the record that at least one [of] them cannot be

satisfied," *Reynolds*, 635 S.W.3d at 931, the Defendant is not entitled to relief on this ground.

### 3.    Jury Instructions

Finally, the Defendant asserts that the trial court erred in using language in the unanimity instruction that differed from the State's election and closing arguments. The State responds, in part, that the Defendant failed to satisfy the fifth factor of plain error review: that consideration of the alleged error is necessary to do substantial justice. We agree with the State.

### a.    Background

As we noted above, the State made its election of offenses after concluding its case-in-chief, and the trial court recorded the election in each count on the unanimity-instruction sheet. For Count 1, the State clarified that its election was "[t]he alleged act of Rape of a Child occurring when defendant put his penis in [the] alleged victim's mouth and she threw up."

For Count 2, the following interaction occurred between the State and the trial court:

| [THE STATE]: | Your Honor, [Count 2] is going to be in the bedroom when he put her on the ground and she points to her vaginal area as to where he put it in, and he said -- she said that it hurt her. |
|---|---|
| THE COURT: | Which occurred in bedroom and alleged victim was thrown on ground and -- |
| [THE STATE]: | He put -- well, the way she said it was he put his thing -- so however you want to put it, judge, in her -- as she pointed to her private area. |

Finally, the State clarified Count 3 as being "[w]hen [t]he [Defendant] made the alleged victim perform oral sex in the bedroom while he held her shoulders down[.]"

- 14 -

The trial court's unanimity instructions mirrored these elections. Count 1 was described as "when the defendant put his penis in the alleged victim's mouth and she threw up." Count 2 was "the alleged act . . . which occurred in the bedroom and the alleged victim was thrown on the ground, and he put his penis in her private area." Count 3 was "the alleged act . . . occurring when the defendant made . . . the alleged victim perform oral sex in the bedroom while he held her shoulders down."

The Defendant raised no contemporaneous objection to either the State's elections or the trial court's phrasing of the unanimity instructions. Accordingly, our review is again confined to the narrow scope of the plain error doctrine.

### b.  Necessary to do Substantial Justice

Before a defendant may obtain plain error relief, the defendant must demonstrate that consideration of the alleged error is "necessary to do substantial justice." *See, e.g.*, *Jones*, 589 S.W.3d at 762. This requirement lies at the core of plain error review and limits relief to those errors that are "especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding." *State v. Page*, 184 S.W.3d 223, 231 (Tenn. 2006). Put differently, the error must be "of such a great magnitude that it probably changed the outcome of the trial." *Adkisson*, 899 S.W.2d at 642. In establishing this factor, the defendant bears a significant burden: he or she must show a "significant probability that the jury *would have acquitted* the Defendant" had the alleged error not occurred. *Vance*, 596 S.W.3d at 256 (emphasis added). Ultimately, whether correction of an error is necessary to achieve substantial justice depends on the facts and circumstances of the particular case. Where the evidence of guilt is clear or overwhelming, the error—even if proven—is unlikely to warrant relief. *See Page*, 184 S.W.3d at 231.

We recognize that the right to a unanimous verdict is a fundamental constitutional protection. *See Smith*, 492 S.W.3d at 231. Even so, not every alleged irregularity implicating that right warrants plain error relief. The fifth factor requires more than a generalized claim of unfairness; it demands an error of such consequence that the integrity of the verdict is compromised and correction is necessary "to do substantial justice." *See Walls*, 537 S.W.3d at 901. In the context of alleged election or unanimity errors, substantial justice is implicated only when the record suggests a genuine risk that the jury's verdict rested on different incidents or when the instructions failed to direct the jury to deliberate upon the same conduct. *See Knowles*, 470 S.W.3d at 426; *State v. Richards*, No. E2022-01468-CCA-R3-CD, 2024 WL 4142596, at *69 (Tenn. Crim. App. Sept. 11, 2024), *perm.*

*app. denied* (Tenn. Apr. 17, 2025), *cert. denied*, No. 25-54, 2025 WL 2824152 (U.S. Oct. 6, 2025).

No such risk appears here. The record shows that the State's elections and the trial court's unanimity instructions were substantively consistent. The State elected three specific acts—two involving oral penetration and one involving vaginal penetration—and the victim testified to each with identifying details tied to distinct locations, circumstances, and sequences. These descriptions allowed the jury to consider each count with reference to a defined event.

Although the victim stated during her forensic interview that abuse occurred "hundreds" of times, the proof at trial did not present these additional episodes as interchangeable, undifferentiated incidents from which the jury might have selected at random. Instead, the elected offenses were distinct, non-generic acts that the victim described with sufficient specificity to distinguish them from any other conduct she referenced.

The minor variation in terminology—using "private area" instead of "vaginal area"—did not alter the conduct described in the election. As the supreme court has explained, "the election requirement applies to offenses, not to the facts supporting each element of the offense." *Knowles*, 470 S.W.3d at 424; *Adams*, 24 S.W.3d at 294. On this record, there is no evidence that the jury deliberated upon different incidents or that any variation in wording affected its verdict.

Even assuming minor variation between the election and the trial court's charge, the Defendant has not shown a "significant probability that the jury would have acquitted" him had the alleged error not occurred. *See Vance*, 596 S.W.3d at 256. The evidence supporting each count was specific and distinct, the jury was properly instructed on unanimity, and nothing in the record suggests juror confusion or divided reliance on separate acts.

We therefore conclude that correction of any alleged error is not necessary to do substantial justice. As we noted above, because an appellate court "need not consider all of the elements when it is clear from the record that at least one [of] them cannot be satisfied," *Reynolds*, 635 S.W.3d at 931, the Defendant is not entitled to relief on this ground.

**CONCLUSION**

In summary, none of the Defendant's assertions satisfies the demanding requirements of plain error relief. With respect to the State's announcement of its election, he has not shown that the procedure employed breached a clear and unequivocal rule of law. As to the references to uncharged conduct during closing argument, the record supports the conclusion that counsel's failure to object was a deliberate trial choice, not an inadvertent omission. Finally, regarding the unanimity instruction, the Defendant has not shown that consideration of the alleged error is necessary to do substantial justice.

Because the Defendant has not established plain error as to the State's election, the closing arguments, or the jury instructions, we respectfully affirm the judgments of the trial court.

s/ *Tom Greenholtz*
TOM GREENHOLTZ, JUDGE